ERVIN F. BARTELS, APPELLEE, v. RETAIL CREDIT COMPANY, A CORPORATION, APPELLANT.

175 N. W. 2d 292

Filed March 13, 1970.   No. 37338.

Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellant.

Abrahams, Kaslow & Cassman and Schrempp, Rosenthal, McLane & Bruckner, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action for libel as a result of reports made by the defendant to certain of its customers concerning the plaintiff.   The jury returned a verdict for plaintiff

in the sum of $60,000, and defendant perfected an appeal to this court.

Plaintiff, who was 59 years of age, was born and raised on a farm near Millard, Nebraska, and had owned and operated a farm near Elkhorn, Nebraska, for the past 13 years. Plaintiff was married and had two children, a son 22 and a daughter 19 years of age. He had never had a traffic violation or ever been arrested for any cause.

For many years plaintiff had been insured under four policies issued by the Northwestern Mutual Life Insurance Company for a total amount of $10,000. In December 1965, he made application with an agent of that company for additional coverage. Thereafter Northwestern Mutual requested the defendant to furnish an information report concerning the character and personal habits of the plaintiff.

On December 27, 1965, defendant issued a written report stating in part that plaintiff was a self-employed farmer farming some 200 acres of land, and had a favorable business reputation. He was a steady, frequent drinker. His personal reputation suffered due to his drinking habits. He would drink to excess often and would then drive his car home; he has not been in any trouble due to drinking; but had been drinking to the extent noted for the time he has been known in the area.

Upon receipt of this report, the Northwestern Mutual requested the defendant to recheck its information, and by letter dated January 11, 1966, the defendant replied in part that it had verified the original information submitted concerning defendant's drinking habits. The report stated it was usually on the weekends that plaintiff was known to overindulge, and at these times he becomes obviously intoxicated. Defendant stated this information had been duly confirmed by sources contacted within the community, and also from file information obtained for other purposes. The Northwestern Mutual did not issue the new insurance.

In the spring of 1966, plaintiff made application for insurance with the Surety Life Insurance Company. On May 16, 1966, the defendant furnished Surety Life a report, together with a letter from defendant's manager concerning plaintiff's character and reputation, stating that his personal reputation in the area was favorable but that he was a steady, frequent drinker and would drink to the point of obvious intoxication. In the past he had to be helped out of the bar and could not walk under his own power. The Surety Life company did not issue a policy.

For several years plaintiff had carried his automobile insurance with the Farmers Insurance Group without incident. The family owned three automobiles which were operated by the plaintiff, his wife, and his two children. In August 1965, the Farmers Insurance Group transferred the insurance on an automobile driven by plaintiff's son to one of its other companies at a higher premium, due to two accidents involving the son. On April 8, 1966, defendant furnished the Farmers Insurance Group with an automobile insurance report which stated in part, "* * * prior to 10-12 months ago, Mr. Bartels was known to drink to some excess. * * * he would become loud and obviously intoxicated * * *." Subsequently, plaintiff received three notices of cancellation from the Farmers Insurance Group for the insurance coverage on the automobiles, effective at the expiration of the policies. Plaintiff thereafter attempted to obtain automobile insurance coverage from the Hartford Insurance Company. On August 22, 1966, the defendant reported to the Hartford in part as follows, that prior to about 1 year ago subject was known to drink to excess. He was not regarded as a steady, regular drinker, but would drink to excess on occasions. Hartford did not issue the coverage.

Plaintiff was finally able to obtain insurance coverage on two of his automobiles on October 27, 1966. The automobiles were without insurance coverage from the

time of the expiration of the Farmers Insurance Group policies until that date.

Plaintiff testified that he had been intoxicated only once in his lifetime, and that was in 1940 when his brother left for the service. He did not drink hard liquor but confined his drinking to beer in limited amounts. Plaintiff produced several witnesses as to his character and drinking habits, both personal friends and businessmen in the Elkhorn community. The substance of their testimony is that they had never known the plaintiff to be intoxicated; that he was a very moderate drinker, confining himself to beer; and that his record for sobriety was good.

Plaintiff by interrogatories secured the names of those persons allegedly contacted by defendant's representatives in making the various reports. Several of these were called as witnesses by the plaintiff. In each instance they denied making the statements contained in the reports.

Defendant's representative at Fremont, F. D. Nevius, who made the initial report branding the plaintiff as an excessive drinker, testified that because of the press of other business he interviewed only two persons for the purpose of making the initial report. One of these was in Hawaii at the time of the trial. The other was called as a witness by the plaintiff. The one who testified positively denied she had ever made the statements contained in the report. Nevius could not remember specifically what either person told him. On cross-examination Nevius admitted that the witness who was in Hawaii told him that she had never seen the plaintiff in an intoxicated condition. Nevius also admitted that he was the one who made the decision not to recommend plaintiff for insurance. In May of 1966, Nevius prepared a report to the Surety Life, again characterizing plaintiff as an excessive drinker, without making any additional investigation whatsoever except, as he testified, talking again to the two previous informants.

The subsequent reports indicated that the owner of the Play Pen Bar was one of the informants. A recheck of the report was made by one of defendant's supervisors, Ronald K. Erskins. Mr. Erskins on cross-examination admitted that the owner of the Play Pen Bar, who was not otherwise identified, had told him that he had never seen Mr. Bartels intoxicated. Erskins' report also indicated that Mr. Bartels had not been in a bar in Elkhorn for 10 or 12 months. However, without making any further investigation, the report contains this statement: "We find that he may be going to other towns, either Elk City, Nebr. or possibly Bennington, Nebr. or even Waterloo, all are fairly close to his farm as is Elkhorn * * *." This same report also contained the information that other sources reported that plaintiff had not been drinking to any excess for the past 10 or 12 months, and that they felt that he has actually been spending pretty much of his time at home taking care of his farming activities.

Defendant alleges 17 assignments of error. In view of the result we reach, it is only necessary to discuss those which can be grouped into two main categories: First, the reports were privileged and not subject to an action for defamation; and second, the trial court erred in giving certain instructions.

This is a case of first impression in this jurisdiction. The weight of authority in other jurisdictions would indicate that reports of mercantile agencies, published in good faith and based upon probable cause, are subject to a qualified or conditional privilege, and ordinarily are not subject to an action for defamation. See Annotation "Defamation—Credit Reports" 30 A. L. R. 2d 776. We are of the opinion that reports made by a mercantile agency to an interested subscriber should be conditionally privileged. A publication loses its character as privileged and is actionable if it is motivated by express or actual malice or if there is such a gross disregard of the rights of the person injured as is equiva-

lent to malice in fact. 33 Am. Jur., Libel and Slander, § 113, p. 115.

The defendant argues: "The reason for the privilege granted in connection with a retail credit report is obvious. It is the necessity of the service of merchantile agencies to the business world and the fact that without the qualified privilege, such agencies would be unable to function properly and business and industry would ultimately suffer the consequences because reports on their proposed customers would either not be obtainable or would be long delayed."

We recognize the need for the services of mercantile agencies, but we must not lose sight also of the need to protect an individual from the secret destruction of his good name and reputation. Users of reports of mercantile agencies usually have utmost confidence in the accuracy of such reports and act accordingly. Consequently, the privilege granted to such agencies must be a qualified one. The privilege must be predicated upon the premise that the reporting agency will exercise all reasonable care to ascertain the facts. Such reports must be compiled with regard to the effect the report will have upon the rights of the subject of the report. To be privileged, a mercantile agency's representatives must act impartially and in good faith, carefully evaluating all information before disseminating any defamatory statements to its subscribers. This requires them to make a thorough and complete investigation and to fully and accurately report information only from reliable sources. An erroneous or careless report serves no purpose except to substantially damage the subject of the report, and when once the report is published, the damage has been done and very little can be done to correct it.

We have set out sufficient of the evidence to indicate that a jury question was presented. The evidence is sufficient to permit the jury to find that the preparation of the reports indicated a lack of reasonable care

and diligence to ascertain the truth, and that they were circulated in reckless disregard of the rights of the plaintiff.

The trial court determined malice as a matter of law and held the publication of the reports to be libelous per se. By instruction No. 7 the jury was instructed that the reports were qualifiedly privileged, and that plaintiff could not recover unless he proved that they were published with actual malice on the part of the defendant. However, in instruction No. 14, the jury was told that the reports, being libelous per se, the plaintiff was entitled to receive nominal damages even in the absence of proof of actual or special damages. The court, in requiring at least nominal damages, undoubtedly overlooked the fact that this case involved a qualified privilege. Unless malice was present, there could be no recovery. The instructions were conflicting. Conflicting instructions are erroneous and prejudicial unless it appears that the jury was not misled. Zimmerman v. Continental Cas. Co., 181 Neb. 654, 150 N. W. 2d 268. The verdict herein, on the present record, is highly excessive, and is subject to reversal on that ground. We can only conclude that the jury was misled by the instructions.

Plaintiff in his pleadings alleged that the defendant falsely and maliciously stated that he was addicted to the excessive use of alcoholic beverages. In his proof he attempted to carry the burden of the falsity of the statements and under proper instructions the jury could have found he had done so. It is a general rule that the burden of proving the affirmative of an issue is on the party alleging it. The trial court in its burden of proof instruction required the plaintiff only to prove malice and the damages proximately caused. Nowhere in the instructions is the plaintiff required to prove the falsity of the reports which in instruction No. 2 the jury is informed he had made an issue.

The defendant in its answer did not plead truth as a

defense. It alleged that any reports it may have furnished concerning the plaintiff to any insurance companies were furnished in good faith and at the request of said companies, which had a legitimate interest in the information contained in said reports and were privileged and not subject to an action for defamation.

The trial court's instructions Nos. 8 and 10 required the defendant to prove the truth of the statements made concerning plaintiff. By statute, truth in and of itself is made a complete defense unless the plaintiff proves the statements were made with actual malice. It is obvious that a defendant who relies upon the truth of the defamatory matter published by him has the burden of proving it. Here, however, the defendant was not relying for its defense on the truth of the statements made by it but on the fact that they were made in good faith under a qualified privilege. These instructions therefore placed an undue burden on the defendant and were erroneous. An instruction which misstates the issues or defenses and has a tendency to confuse or mislead the jury is erroneous. Chard v. New York Life Ins. Co., 145 Neb. 429, 16 N. W. 2d 858.

For the reasons given, the judgment herein is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.