Verlie D. NICCUM, Appellant,

v.

FARMERS COOPERATIVE ELEVATOR
COMPANY OF GILTNER,
NEBRASKA, Appellee.

No. 71–1391.

United States Court of Appeals,
Eighth Circuit.

March 28, 1972.

**454**

Richard J. Dinsmore, Schrempp & Bruckner, Omaha, Neb., for appellant.

Steven G. Seglin, Crosby, Pansing, Guenzel & Binning, Lincoln, Neb., for appellee.

Before BREITENSTEIN, Senior Circuit Judge,* and HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal is from an unreported decision of Judge Urbom in which the trial court denied recovery for the appellant Niccum in an employment contract action.

Niccum and the appellee (Farmers Coop) entered into a written employment contract effective February 4, 1964. Niccum was employed to manage the affairs and operations of appellee's grain elevator in Giltner, Nebraska, and did such until his resignation upon request on October 16, 1965.

Niccum subsequently instituted this action below seeking unpaid compensation for 1964 in the amount of $5,000 and for 1965 in the amount of $7,750.

Paragraph 6 of the agreement reads as follows:

\* \* \* \* \*

6. As fixed compensation for the Manager's services, the Association shall pay the Manager a salary of $500.00 per month, payable either monthly or semi-monthly. In addition, the Association shall pay a bonus to the Manager at the close of the fiscal year, per audited figures, as follows: Manager's total salary, including commission, shall be $12,000 per year, or one percent of the total gross sales of the Association, whichever figure is the greater. Manager in addition shall be furnished a house for the period of his employment plus sixty (60) days from time he has received written notice of his termination date.

\* \* \* \* \*

Appellant's evidence at the trial in regard to the sums allegedly due under the contract consisted solely of Niccum's testimony that the amounts prayed for were due him for the two-year period and that he was to be paid under the contract a base salary plus "1 percent of sales."[1] Appellee's cross-examination of

* Senior Circuit Judge, Tenth Judicial Circuit, sitting by special designation.

1. Q. Now, Mr. Niccum, under the terms of the contract you were paid a certain base salary, is that correct?
A. Yes.
Q. And were you paid any other monies under the terms of your contract?
A. Up until the last year, yes.
Q. Were you to be paid any other monies?
A. Yes.
Q. What were the terms of the contract with reference to the other monies you were to be paid?
A. 1 percent of sales.
Q. And were you paid the monies up through the time you were terminated?
A. No.
Q. Were you paid for the year 1964?
A. No.
Q. Or for the year 1965?
A. No.
\* \* \* \* \*
Q. On the date of your termination, October 16, 1965, were certain monies due and owing you, Mr. Niccum?

A. Yes.
Q. Have you made demands upon the Board of Directors of the Giltner Elevator Company for those monies?
A. Yes.
Q. Have you ever received that amount of money?
A. No.
[Page 9] Q. How much money is due you for the year 1964?
A. $5,000.
Q. And how much is due you for the year 1965?
A. I can look. Is that all right?
Q. Yes.
A. $7,919.90.
Q. So what would the total amount of money without interest be due you for the years 1964 and 1965?
A. It would be $12,919.90.
(Interrogatories, the answers to which indicate that Niccum had been paid approximately one per cent of appellee's gross annual sales in 1964 and 1965, were not offered into evidence although they are included in the appendix furnished us on appeal.)

Niccum was directed exclusively to certain acts of negligence by Niccum alleged in appellee's counterclaim for damages resulting from grain deterioration and shortage.[2]

The trial court ruled that the contract called for Niccum to be paid a monthly salary of $500 plus a *bonus* "so that his total salary including 'commission' would be $12,000.00 per year or one per cent of the total gross sales," whichever figure was the greater. His memorandum states:

> The evidence is entirely unclear as to whether the plaintiff claims that any of the regular salary of $500.00 per month was not paid him, but it appears that the parties tried the case on the theory that the plaintiff's claim was for the additional compensation denominated "bonus" in the contract of employment. The burden of proof being on the plaintiff on this issue, I conclude that the claim is for the additional compensation and that the rules of law pertaining to bonuses are therefore applicable.

The Court concluded that Niccum was not entitled under Nebraska law to the bonus since he had been discharged for good cause, i. e., Niccum's termination was due to his own acts of negligence. See Sinnett v. Hie Food Products, Inc., 185 Neb. 221, 174 N.W.2d 720 (1970).

Niccum asserts error in the trial court's interpretation of the agreement as a "bonus" contract, arguing that the agreement called for a straight salary of $12,000 per annum or one percent of appellee's annual gross sales, whichever was greater. The mention of the term bonus in the contract, Niccum claims, was mere surplusage since the parties to the agreement never treated the contract as anything other than a straight salary agreement.

It is clear that the appellant completely failed below in his burden to go forward with the evidence and produce extrinsic proof to establish that appellant's interpretation of the contract was the interpretation given to the agreement by both parties. This burden rests upon and remains with the party asserting the affirmative on the issue in the pleadings. Joseph A. Bass Co. v. United States, 340 F.2d 842 (CA8 1965). See *e. g.*, Bartels v. Retail Credit Co., 185 Neb. 304, 175 N.W.2d 292, 296 (1970) and In re George's Estate, 144 Neb. 887, 15 N.W.2d 80, 84 (1944). See also 1 Jones, Jones on Evidence, § 206 (5th ed. 1958) and 9 Wigmore, Wigmore on Evidence, §§ 2485–2489 (3d ed. 1940). Absent the introduction of extrinsic proof into evidence, the interpretation and construction of the contract was within the exclusive province of the trial court.[3]

Although the parties tried this case on the theory that plaintiff's claim was for additional compensation in the form of a bonus, we note from our search of the record that the parties in their pleadings apparently construed the agreement as a regular salary arrangement. In the appellant's complaint, paragraph 3, it was alleged . . . "That as compensation for his service, as manager, plaintiff was to receive the following payment: 'manager's total salary, including commissions, shall be $12,000.00 per year, or one per cent (1%) of the total gross sales of the association, whichever is greater.' " Paragraph 1 of appellee's answer and crosscomplaint stated that it "Admits the allegations of paragraph . . . 3 . . . . " It is thus apparent from the pleadings that appellant alleged the contract was a regular salary agreement and since the appellee admitted the same, the trial court was arguably fore-

---

2. The trial court entered judgment for the appellant on the appellee's counterclaim.

3. See Patterson, "The Interpretation and Construction of Contracts," 64 Col.L.Rev. 833 (1964) and Farnsworth, " 'Meaning' in the Law of Contracts," 76 Yale L.J. 939 (1967).

closed from interpreting the agreement as a "bonus" contract.

■■ This does not change the result, however, for appellant completely failed in his burden of proving that he suffered damages as a result of appellee's breach of the contract. In Nebraska, the measure of damages in a suit for breach of contract for personal services is the amount of salary agreed upon for the period involved less the amount which the employee earned or, with reasonable diligence might have earned from other employment during that period. Lee v. Ralston School District, Douglas County, 180 Neb. 784, 145 N. W.2d 919 (1966). In the absence of mitigating evidence, the measure of damages is the contract price. Schlueter v. School District No. 42 of Madison County, 168 Neb. 443, 96 N.W.2d 203 (1959). But the party claiming damages for a breach of contract has the burden of proving the amount of his damage. O'Hara v. Frederickson Building Corp., 166 Neb. 206, 88 N.W.2d 643 (1958).

■ Here, although appellee admitted in its answer that appellant was to receive as compensation under the contract, $12,000 per annum or one per cent of gross sales, appellee specifically denied that there was any money still due and owing to appellant under the terms of the contract. The only evidence offered by appellant was his testimony that $5,000 for 1964 and $7,919.90 for 1965 was still due him under the contract.[4] He offered no evidence as to the amount he had been in fact paid, the amount he should have received, or how the amount claimed to be due was computed. Under these circumstances an award of damage would be uncertain, conjectural and bordering on speculation and therefore, not recoverable. *O'Hara, supra,* 88 N.W.2d at 648.

Affirmed.