ATKINSON, Appellant, et al.,

v.

STOP–N–GO FOODS, INC., Appellee.

[Cite as *Atkinson v. Stop–N–Go Foods, Inc.* (1992), 83 Ohio App.3d 132.]

Court of Appeals of Ohio,
Montgomery County.

No. 13198.

Decided Oct. 8, 1992.

*Frederick Davis, Jr.,* for appellant.

*Michael J. Burdge,* for appellee.

FAIN, Presiding Judge.

Plaintiff-appellant Chris Atkinson appeals from a summary judgment rendered in favor of defendant-appellee. Atkinson contends that his claims of defamation and malicious prosecution should have survived summary judgment. We conclude that when the evidence is viewed in a light most favorable to Atkinson, reasonable minds can only come to the conclusion that the alleged defamatory publications were within the scope of the qualified privilege, and were neither actuated by malice nor reckless disregard of the truth. Furthermore, when the

same test is applied to the malicious prosecution claim, reasonable minds can only conclude that the appellee had probable cause to file a criminal complaint against Atkinson.

Accordingly, we conclude that the trial court did not err by rendering summary judgment in favor of appellee, and the judgment is affirmed.

## I

Atkinson worked for defendant-appellee Stop–N–Go Foods, Inc., at a convenience store in the Dayton area. One morning in September 1988, Atkinson arrived at the store to work his normal shift, which ran from 6:00 a.m. to 2:00 p.m. Because the store manager was on vacation, Atkinson was designated as the acting assistant manager. Part of his duties as the acting assistant manager was to deposit the money taken in after first counting and securing it. On the afternoon in question, the money for which he was responsible totaled $3,973.93. The bank claimed never to have received that money.

Atkinson's supervisors contacted the bank where the money was supposed to have been deposited to discuss night deposit procedures and the bank's security measures in receiving such deposits. About a week after the loss, Atkinson underwent a polygraph examination administered by the J.R. Finlay Detective Agency, Inc., an independent company. The polygraph examiner's report included the following:

"Two charts were run and specific reactions indicated of [*sic*] deception were noted to the relevant questions pertaining to: knowledge of who stole that missing deposit, stealing that missing $3,973.83 and stealing that $3,829.83 in cash. [The lost deposit included $144 worth of food stamps.]"

The polygraph examiner concluded that: "After careful analysis of this subject's polygrams, it is the opinion of the examiner that he did not tell the truth during his examination."

Stop–N–Go fired Atkinson, and Brad Rittenhouse, an employee of Stop–N–Go, filed a criminal complaint against Atkinson. The Montgomery County Grand Jury ultimately declined to indict Atkinson.

Atkinson and his wife brought this action against Stop–N–Go and certain individual defendants. Among other claims, Atkinson alleged defamation and malicious prosecution.

On October 17, 1991, Stop–N–Go and the other individual defendants moved for summary judgment on all claims, and supported their motion with depositions, including deposition exhibits. On October 31, 1991, the Atkinsons moved to strike Stop–N–Go's motion for summary judgment or, in the alternative, for an extension of time within which to respond until November 14, 1991.

On November 15, 1991, at 10:35 a.m., the Atkinsons filed their memorandum opposing the motion for summary judgment. At 1:33 that afternoon, the trial court filed a judgment entry, the full text of which is as follows:

"This matter comes before the court on the defendants' motion for summary judgment. Although Plaintiffs requested, and were granted, an extension of time to November 12, 1991 to file any affidavits and other materials opposing the motion, no such affidavits or materials have been submitted.

"Considering the evidence submitted in the light most favorable to the Plaintiffs, the court finds that there is no genuine issue as to any material fact, that reasonable minds can come to but one conclusion, that that conclusion is adverse to the Plaintiffs and that the Defendants are entitled to judgment as a matter of law. The Defendants' motion is therefore sustained in its entirety. It is therefore

"ORDERED, ADJUDGED and DECREED that final judgment be and is hereby entered in favor of the Defendants and against the Plaintiffs and that the complaint is dismissed with prejudice.

"Costs to be paid by Plaintiffs."

From the summary judgment, Chris Atkinson, but not Cyndi Atkinson, appeals.

## II

Although there are no express assignments of error in Atkinson's brief, we infer from his argument headings the following to be his first assignment of error:

"The trial court erred in granting summary judgment on plaintiffs' claim for defamation because the record contained sufficient evidence to raise a jury question as to whether publication occurred."

When Atkinson was fired, Stop–N–Go told him, but no one else, that he was being fired because he had stolen from his employer. Atkinson contends that the doctrine of "forced republication" should extend to this statement because Stop–N–Go had to have foreseen that a person in Atkinson's position would, as a practical matter, be required to republish that statement to prospective employers when applying for another job. Atkinson cites authority in support of the "forced republication" doctrine and Stop–N–Go cites authority in opposition to that doctrine.

██ Whether the "forced republication" doctrine is good law in Ohio appears to be a nice question, but it is not a question that we need to decide in connection with this appeal. It appears that Atkinson was subsequently employed by his father. He has neither alleged nor averred that he did, in fact, republish the

defamatory statement to a prospective employer. We do not understand the "forced republication" doctrine to eliminate the requirement of publication of the defamatory statement to a third person; we understand that doctrine merely to permit that that requirement may be satisfied by the "forced republication" of the defamatory statement by the person defamed to a third person. In the case before us, there was no allegation in the pleadings, nor was there any averment in connection with the motion for summary judgment, to the effect that the defamatory statement was ever, in fact, republished to a third person. Without republication to a third person, the "forced republication" doctrine can have no application.

Atkinson also contends that Stop–N–Go defamed him when it conferred with Dayton police officers prior to filing a criminal complaint. Although Atkinson recognizes that the statements made to the Dayton police officers were subject to a qualified privilege, he contends that those statements were made with reckless disregard for the truth, relying upon *Patio World v. Better Business Bureau, Inc.* (1989), 43 Ohio App.3d 6, 538 N.E.2d 1098. Atkinson contends that Stop–N–Go's failure to conduct a more thorough investigation of the loss of its money constituted a reckless disregard for the truth.

In *Patio World, supra,* we reversed a summary judgment rendered in favor of the defendant. We concluded that when all of the evidentiary material was viewed in a light most favorable to the plaintiff in that case, a reasonable mind could conclude that the defendant, which was in the business of compiling information about businesses, had no basis whatsoever for having made one of a number of statements about the plaintiff. Therefore, a reasonable mind could have found that that particular statement had been made with reckless disregard for the truth.

The case before us is distinguishable. A sum of money that had been under Atkinson's exclusive control, and for which he was responsible, was missing. Stop–N–Go contacted the bank, where the money was supposed to have been deposited, and was assured by representatives of the bank that there had been no irregularities at that end. Stop–N–Go required Atkinson to take a polygraph examination, and the independent polygraph examiner concluded that Atkinson was lying about his responsibility for the loss of the money. At that point, Stop–N–Go certainly had reason to believe that Atkinson had stolen the money. Therefore, statements made by representatives of Stop–N–Go to the police were not made with reckless disregard for the truth, and remained within the scope of the qualified privilege.

Atkinson relies upon the following language in *Bartels v. Retail Credit Co.* (1970), 185 Neb. 304, 309, 175 N.W.2d 292, 296, 40 A.L.R.3d 1039, 1046–1047, which we quoted in *Patio World v. Better Business Bureau, supra:*

"We recognize the need for the services of mercantile agencies, but we must not lose sight also of the need to protect an individual from the secret destruction of his good name and reputation. . Users of reports of mercantile agencies usually have utmost confidence in the accuracy of such reports and act accordingly. Consequently, the privilege granted to such agencies must be a qualified one. The privilege must be predicated upon the premise that the reporting agency will exercise all reasonable care to ascertain the facts. Such reports must be compiled with regard to the effect the report will have upon the rights of the subject of the report. To be privileged, a mercantile agency's representatives must act impartially and in good faith, carefully evaluating all information before disseminating any defamatory statements to its subscribers. This requires them to make a thorough and complete investigation and to fully and accurately report information only from reliable sources. An erroneously or careless report serves no purpose except to substantially damage the subject of the report, and when once the report is published, the damage has been done and very little can be done to correct it."

The qualified privilege articulated in *Bartels* would seem to be illusory. The "protection" afforded by the qualified privilege in this setting would seem to subject a mercantile agency to a higher standard of care than ordinary negligence since it would require the agency to make a thorough and complete investigation and to fully and accurately report information only from reliable sources. This would seem to. be akin to the higher standard of care imposed upon common carriers, for instance. Although we do not necessarily question the result in *Bartels* (to the contrary, we quoted from it approvingly in *Patio World v. Better Business Bureau* ), it would seem to be more straightforward to hold simply that a mercantile agency, because of its commercial position, is not entitled to a qualified privilege.

The passage from *Bartels* quoted by this court in *Patio World v. Better Business Bureau* was not essential to this court's holding, and does not, in any event, apply to a person in Stop–N–Go's position. Stop–N–Go is not in business to provide accurate reports to its customers concerning the character and integrity of specified individuals.

When the evidence is viewed in a light most favorable to Atkinson, we find that reasonable minds could come to but one conclusion, and that conclusion is that the statements made by representatives of Stop–N–Go to Dayton police officers were within the scope of the qualified privilege, were not motivated by actual malice, and were not made with reckless disregard for the truth.

Atkinson's first assignment of error is overruled.

## III

Atkinson's implied second assignment of error is as follows:

"It was error for the trial court to summarily dismiss plaintiff's claim of malicious prosecution."

■ Essentially, Atkinson contends that Stop–N–Go was without probable cause to file criminal charges against him. Probable cause, the lack of which is an element in a malicious prosecution claim, has been defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." *Portis v. TransOhio Savings Bank* (1988), 46 Ohio App.3d 69, 70, 545 N.E.2d 923, 924.

The uncontroverted evidence submitted by Stop–N–Go established that Atkinson had the sole custody of, and was solely responsible for, the lost money; that communication with the bank where the money was supposed to have been deposited resulted in no explanation for its not having been deposited; and that a polygraph examiner who examined Atkinson concluded that he was lying when he denied having stolen the money. In view of these facts, no reasonable mind could fail to conclude that Stop–N–Go had probable cause for its belief that Atkinson had stolen its money.

Atkinson's second assignment of error is overruled.

## IV

Both of Atkinson's assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and BROGAN, JJ., concur.