NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0042n.06

No. 22-3375

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EMAD ALABSI, | ) | **FILED** |
| | ) | Jan 20, 2023 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| CITY OF CLEVELAND, et al., | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| Defendants, | ) | OHIO |
| | ) | |
| JACK CLEVELAND CASINO, LLC, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |

Before: SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Emad Alabsi had a bad night at cards. He claims he suffered injury from alleged violations of law committed by Jack Cleveland Casino, LLC (Casino) and others. After the district court granted judgment on the pleadings on some of the claims and Alabsi voluntary dismissed others, all that remained were counts against the Casino for defamation, abuse of process, and intentional infliction of emotional distress. The Casino moved for summary judgment on those final claims, which the district court granted. We AFFIRM.

## I.

Alabsi plays poker for a living. By his own description he conducts his business at the Casino on a weekly basis. On August 30, 2019, his business at the tables began at around 2 p.m. For most of the hands, his game was "PLO, Pot Limit Omaha." Play continued until around 3 a.m. the next day, when Alabsi, along with some other players, "lost the pot." One player who took the

pot was Dustin Hoffman. According to Alabsi, Hoffman began antagonizing and provoking him. Alabsi tried to get the dealer to stop Hoffman's heckling, but to no avail.

Alabsi then called for help from the floor supervisor. While waiting for her to arrive, Alabsi turned to Hoffman and said something along these lines: "if you do this somewhere else to someone you don't know, believe me, you will be spitting your teeth out because nobody is going to keep up with your mouth the way you're talking to us because you're a friend and we both know each other." Alabsi Dep., R.59-1, PageID.351. When the floor supervisor reached the table, she asked the dealer what had happened. The dealer responded that Alabsi had threatened Hoffman. According to the dealer, Alabsi had told Hoffman that "he was going to kick [Hoffman's] teeth in or bust his teeth in to where he's drinking out of a straw." Swanberg Dep., R.65-1, PageID.548. After this report, the dealer rotated out, as was routine.

Alabsi and the Casino dispute what happened next. Alabsi claims that, without being asked to leave, he decided he was done and went to cash in his chips and obtain a parking validation. At some point, the supervisor allegedly communicated to two off-duty police officers that Alabsi was engaging in disorderly conduct and trespassing. The officers confronted Alabsi and told him he needed to leave. Alabsi claims he responded that he was, indeed, leaving. But that did not stop the officers from grabbing him by the arm and beginning to forcibly remove him. Escalating the situation further, one officer allegedly pulled out a taser. Although it was not used, Alabsi claims that he feared greatly for his safety and still has nightmares from his time with the officers.

That encounter continued as the officers used force on Alabsi to shove him along. While being ushered out the door, Alabsi asked for the officers' names and badge numbers, which they refused to disclose. Once outside, according to Alabsi, the officers slammed him on his car, popped his shoulder, and put handcuffs on him before taking him back inside the Casino. There,

the officers placed Alabsi in a room where he was detained for approximately 20 minutes. During that time the officers refused to allow Alabsi to use the restroom. They gave him a citation, claiming it was for disorderly conduct, but later, Alabsi found out he had been cited for criminal trespass.

Alabsi then filed a complaint against the Casino, as well as several others. At issue for this appeal are Alabsi's claims of defamation, abuse of process, and intentional infliction of emotional distress against the Casino. Alabsi alleges that the Casino defamed him when its employees stated that Alabsi threatened another player and that he was engaging in disorderly conduct and criminally trespassing. As for his abuse-of-process claim, Alabsi alleges that the Casino wrongfully accused him of unlawful conduct and had him charged with criminal trespassing for "the improper purpose of banning him from the casino premises." Finally, Alabsi claims that he suffered emotional distress that was intentionally inflicted by the Casino. The Casino moved for summary judgment on all of these claims, which the district court granted. Alabsi filed a timely appeal.

## II.

We review a district court's grant of summary judgment de novo. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 943 (6th Cir. 2022) (citation omitted). We affirm summary judgment when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See id.* (citing Fed. R. Civ. P. 56(c)). When inferences may be fairly drawn from the underlying facts, those inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). But "this Court does not weigh the evidence or make credibility judgments when reviewing a summary judgment

motion." *Spratt v. FCA US LLC*, 812 F. App'x 348, 355 (6th Cir. 2020) (citing *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011)).

The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Indeed, it "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) (quoting *Anderson*, 477 U.S. at 252, 257).

### III.

#### A. Defamation

As the parties do not dispute, Ohio law governs the tort claims in this appeal. Ohio courts define defamation as "the publication of a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Lucas v. Perciak*, No. 96962, 2012 WL 112983, at *3 (Ohio Ct. App. Jan. 12, 2012) (quoting *Jackson v. Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008)).

To establish a prima facie case of defamation, the injured party must establish "(1) a false and defamatory statement of fact; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) which was either defamatory per se or caused special harm to the plaintiff." *Hurst v. Moore*, No. 17-CA-4, 2017 WL 3500412, at *3 (Ohio Ct. App. Aug. 15, 2017) (citation omitted).

Alabsi alleges that the Casino's employees made several false statements about him: (1) that he threatened another person at the casino, Dustin Hoffman; (2) that he refused to leave the Casino; and (3) that he engaged in disorderly conduct at the Casino. He argues this information

was published when the dealer informed his supervisor, and when that supervisor in turn informed the two off-duty police officers of Alabsi's alleged misbehavior.

As explained below, we conclude that, with respect to each alleged defamatory statement, Alabsi has insufficient proof to create a jury question on at least two elements for a prima facie defamation case. Specifically, he fails to offer (1) evidence that the Casino's employees acted with fault of at least negligence (as required by element four), and (2) evidence of malice to overcome the Casino's evidence of qualified or conditional privilege (as required by element three). We discuss each of these deficiencies of Alabsi's proof in turn below.

1. Negligence

We begin with the fourth element, the fault requirement, as the district court granted summary judgment for the Casino on that ground. Alabsi correctly argues that, to establish fault of at least negligence, "the plaintiff's burden is then to prove, by clear and convincing evidence, that the defendant did not act reasonably in attempting to discover the truth or falsity of the publication." *Franks v. The Lima News*, 672 N.E.2d 245, 248 (Ohio Ct. App. 1996) (citing *Lansdowne v. Beacon J. Publ'g Co.*, 512 N.E.2d 979 (Ohio 1987)). But he provides no argument other than the bare assertion that the defendant made false statements. Alabsi fails to clarify how the Casino's employees negligently spread the purportedly false information; he recites only how the events unfolded from the time the initial employee made the first alleged false statement to the moment the two police officers confronted him. Indeed, on appeal Alabsi changes very little from his assertions to the district court; he again does not argue or explain how, if at all, the defendant was negligent. From this we can infer only that Alabsi argues that the very nature of the employees' actions was negligent. But that is not enough to survive summary judgment. Absent any evidence establishing negligence, Alabsi cannot show the requisite fault for the Casino to be

liable. *See Brooks v. Tennessee*, 626 F.3d 878, 891 (6th Cir. 2010) ("'It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *Spirko v. Mitchell,* 368 F.3d 603, 612 (6th Cir. 2004)).

>   2.   Privilege of the Alleged Statements

There is an alternate and independent ground for affirming the district court's ruling that it did not reach. *See Sw. Williamson Cnty. Cmty. Ass'n v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999) (citing *Dandridge v. Williams*, 397 U.S. 471, 497 n.6 (1970)) (stating that "this court can affirm the district court on alternate grounds supported by the record.")  Even assuming that there is a genuine material dispute about whether at least some of the alleged defamatory statements are false, Alabsi's proof is inadequate to create a jury question on the third element, that those statements were published without privilege.  A communication has qualified or conditional privilege when it is "[in] good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn v. Kotten*, 331 N.E.2d 713, 718–19 (Ohio 1975) (citation omitted).  This doctrine "affords some latitude for error, thereby promoting the free flow of information on an occasion worthy of protection." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1290 (Ohio 1995) (citation omitted).  The defendant has the burden of showing that the communication in question was privileged. *See id.* at 1290–91.  If the defendant shows that the circumstances warrant qualified privilege and asserts that such statements were made in good faith, the plaintiff must rebut that by showing that the defendant acted with malice in making the statements. *Id.* at 1291.

The Casino provides several reasons that we find persuasive for why its employees' communications were privileged. About the dealer's communication to his supervisor, the Casino argues that the dealer heard what he believed to be a threat of physical harm and informed his supervisor about it. That communication was privileged, the Casino argues, because both persons were Casino employees and therefore had a shared interest in protecting the public and patrons from threats of violence. Such communication would certainly fall within the bounds of a defendant reasonably believing that circumstances existed that required communicating to a third party certain facts, in good faith. *See Hahn*, 331 N.E.2d at 719 (A communication is privileged when "made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation.") (quoting *West v. Peoples Banking & Tr. Co.*, 236 N.E.2d 679, 681 (Ohio Ct. App. 1967)).

As for the floor supervisor's statements to the off-duty police officers, the Casino argues that she merely reported what she believed to be a crime to the police. The supervisor, according to the Casino, has an interest in public safety, as do the police officers. Ohio courts have generally held that reports of crime to police fall under qualified privilege. *See Atkinson v. Stop-N-Go Foods, Inc.*, 614 N.E.2d 784, 786 (Ohio Ct. App. 1992) (holding that "statements made by representatives of Stop-N-Go to the police were not made with reckless disregard for the truth, and remained within the scope of the qualified privilege"); *Stokes v. Meimaris*, 675 N.E.2d 1289, 1298 (Ohio Ct. App. 1996) ("Private citizens are qualifiedly privileged to give information to proper governmental authorities for the prevention or detection of crime.") (quoting *Paramount Supply Co. v. Sherlin Corp.*, 475 N.E.2d 197, 202–03 (Ohio Ct. App. 1984)). Thus, the supervisor's statements were privileged as well.

Because the Casino has raised a valid defense of qualified privilege, Alabsi has the burden to point to evidence of malice to overcome that defense. *A & B-Abell Elevator Co.*, 651 N.E.2d at 1291. But Alabsi does not even address the Casino's arguments about qualified privilege. He therefore has waived the issue of whether the dealer and supervisor had actual malice in their statements. *See Brooks*, 626 F.3d at 891. Further, the record does Alabsi no favors here. When asked about the interactions between the supervisor and the police, Alabsi claims that he had no knowledge of the statements being made to parties other than the Casino employees and the police. And Alabsi does not contend that the statements were made with malice nor does he provide any argument that the statements were made in bad faith. Therefore, even if the alleged statements were false, absent a showing of malice, those statements are protected by qualified privilege. *Hahn*, 331 N.E.2d at 720–21; *see also Carter v. Pristine Senior Living & Post-Acute Care*, 170 N.E.3d 544, 546 (Ohio Ct. App. 2021) (determining that qualified privilege applied to nurse's report to the police that nursing home resident's son threatened to hit her where there was no evidence of malice).

For that reason, and also because Alabsi failed to offer proof of at least negligence on the part of the Casino, the district court properly granted summary judgment for the Casino on the defamation claim. *See Kinney v. Kroger Co.*, 767 N.E.2d 1220, 1224 (Ohio Ct. App. 2001) (summary judgment proper where the plaintiff fails to establish elements of a defamation prima facie case).

B. Abuse of Process

A successful claim for abuse of process requires evidence of the following: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and

(3) that direct damage has resulted from the wrongful use of process." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994)). An important distinction between abuse of process and malicious prosecution is that the latter requires the claimant to prove that there was no probable cause for the earlier alleged wrongful proceedings while abuse of process rests on the premise that there was. To impose liability based on abuse of process, probable cause is not the focus; motivation for that proceeding is.

More specifically, abuse of process requires a showing that the earlier alleged wrongful proceeding had a certain malicious ulterior purpose. Common examples include "coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money." *Id.* (quoting Prosser & Keeton on Torts § 121, at 898 (5th Ed. 1984)). Furthermore, it is insufficient just to allege that the motivation behind the proceeding was malicious or in bad faith: the ulterior purpose for the proceeding must have been to obtain something that the court in the normal course of the proceedings could not order. *Id.* For instance, a party's motivation to obtain money alone cannot constitute bad faith for filing a lawsuit because monetary recovery is a quintessential aspect of litigation. *See Sullivan v. Tuschman*, No. L-06-1373, 2007 WL 2013531, at *3 (Ohio Ct. App. July 13, 2007) (citing *Pryor v. Webber*, 263 N.E.2d 235, 238 (Ohio 1970)) ("In Ohio, as elsewhere, it is a rule of universal application in a tort action, that the measure of damages is that which will compensate and make the plaintiff whole."); *see also Yaklevich*, 626 N.E.2d at 118 n.2 ("[T]here is no liability for abuse of process where defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") (cleaned up). Instead, for abuse of process to occur, the motivation for the suit

must be "to achieve through the use of the court that which the court is itself powerless to order." *Robb*, 662 N.E.2d at 14.

Construing the facts in the light most favorable to Alabsi, he fails to prove the elements of an abuse-of-process claim. Alabsi argues that the Casino did not follow its own procedure when the supervisor informed the police officers of Alabsi's alleged criminal trespass. The Casino's policies require an employee to ask that the customer leave and, if the customer refuses, to summon security employees for assistance, which employees would then seek assistance from police in removing the customer from the Casino premises. Alabsi argues that the Casino's failure to follow its processes led to his criminal trespass charge and caused him: (1) humiliation, fear, anxiety, and apprehension; (2) to be banned from the Casino for 90 days; and (3) loss of income, attorney's fees, and inconvenience in defending the criminal trespass charge.

Assuming all these facts are true, Alabsi still offers insufficient proof for a reasonable jury to find that all of the abuse-of-process elements are met. First, Alabsi has not alleged that a legal proceeding was "set in motion in proper form and with probable cause." *Id.* Rather, he argues that the Casino *lacked* probable cause and did not follow its *own* procedure. But, even if we construe his argument to suggest that the *criminal* charge was nevertheless carried out with proper form and probable cause, he still does not satisfy the requirement that the Casino had an ulterior purpose for which the legal proceeding was not designed. Alabsi does not offer an improper ulterior motive for the proceedings (even assuming that the Casino initiated them),[1] though he does argue in his amended complaint that the Casino had the ulterior motive of banning Alabsi from the Casino premises. Even if true, the court could have ordered that very remedy of expulsion from

---

[1] The Casino disputes that it initiated any proceeding against Alabsi. We need not address the proof pertaining to that issue because Alabsi in any event fails to meet the second element of abuse of process.

the premises through either an injunction or a protective order in favor of the Casino. *See Cantrell v. Deitz*, No. 12AP-357, 2013 WL 1286661, at *5–6 (Ohio Ct. App. Mar. 28, 2013) (where plaintiff failed to prove that an action seeking a protective order had an ulterior motive of depriving him of carrying a weapon, which would have affected his livelihood). Even more, the Casino can ban Alabsi of its own accord, which it did. The Casino would have no need to pursue a criminal charge to achieve that end. And given that Alabsi does not prove that the legal process was used for an improper ulterior motive, he cannot prove damages from the same. *See id.* at *6. Thus, the district court properly granted summary judgment for the Casino after determining that Alabsi failed to satisfy the elements for abuse of process.

C. Intentional Infliction of Emotional Distress

There are four elements to prove intentional infliction of emotional distress:

1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' Restatement of Torts 2d (1965) 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it,' Restatement of Torts 2d 77, Section 46, comment j. It is not necessary that bodily injury or any physical impact be shown.

*Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio Ct. App. 1983).

Satisfying the "extreme and outrageous" element is particularly difficult:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community

would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983) (abrogated on other grounds). In this sense, liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (citation omitted).

Alabsi does not persuade us that summary judgment was improperly granted on his emotional distress claim. Like his approach to prior issues, Alabsi spends little time developing arguments relating to the legal elements. He mainly asserts that the Casino knew or should have known that its actions—including falsely accusing him of criminal trespass and banning him from the Casino—would lead to the conduct of the two police officers and subsequent serious emotional distress for Alabsi. But Alabsi focuses mostly on the damages he suffered rather than the conduct in question; he presents no evidence that would demonstrate that the Casino's statements and conduct went "beyond all possible bounds of decency." *Id.*

Even if the accusations he ascribes to the Casino were false, such statements would at most constitute "[t]he rough edges of our society." *Id.* They may be "still in need of a good deal of filing down," *id.*, but they are not tortious. *See e.g., Roe ex rel. Roe v. Heap*, No. 03AP-586, 2004 WL 1109849, 2004-Ohio-2504, at *27 (Ohio Ct. App. May 11, 2004) (holding that a parent's email alleging that a student was a convicted sex felon was not sufficiently "extreme and outrageous" to survive summary judgment on IIED claim).

This conclusion is also evident from *Breno v. City of Menor*, No. 81861, 2003 WL 21757504 (Ohio Ct. App. July 31, 2003). In that case an individual (Hausler) contacted police to inform them that one of his acquaintances (Breno) had viewed and stored child pornography on Hausler's computer. *Id.* at *1. After an investigation, no criminal charges were brought and Breno filed a complaint against Hausler for intentional infliction of emotional distress, among other

things. *Id.* But the court concluded that, even though "a report of child pornography is a very serious allegation, we find nothing extraordinary, intolerable, or extreme in degree about the facts of this case as compared to an ordinary claim for defamation arising out of the reporting of alleged criminal activity." *Id.* at *4. If such a false accusation of child pornography cannot give rise to a claim of intentionally inflicted emotional distress under Ohio law, then the far less inflammatory charges allegedly made by the Casino against Alabsi are likewise insufficient to form the basis for "extreme and outrageous" conduct. Nor does the Casino's banning Alabsi for 90 days—a suspension it was legally entitled to do—amount to the type of despicable behavior that can give rise to an emotional distress claim. Therefore, the district court properly granted summary judgment for the Casino on this count as well.

IV.

For the foregoing reasons we AFFIRM the district court's grant of summary judgment for the Casino.