OPINION
In this timely appeal David A. Guy ("Appellant") challenges a decision of the Jefferson County Court of Common Pleas granting Appellees' motion for summary judgment and dismissing his complaint for malicious prosecution and defamation. For the following reasons, this Court affirms the judgment of the trial court.
Appellant was a Steubenville Police Officer from November 30, 1988, until his discharge on August 12, 1998. Appellees are former Steubenville Chief of Police, Jerry McCartney, and City Manager, Gary DuFour.
On July 24, 1996, City Prosecutor, Michael Bednar, signed a complaint charging Appellant with two counts of receiving stolen property in violation of R.C. § 2913.51. The charges were based largely on information provided to police by accused thief, Jody Brokaw. Until his arrest, Brokaw had been employed by Ferguson Tire Service in Weirton, West Virginia, for approximately fifteen years. (Appellees' Brf. Exh. F, p. 4).
The record reflects that sometime in January of 1996, after installing a computerized inventory system, the owner of Ferguson Tire Service became convinced that someone was stealing tires from him. Ferguson reported his suspicions to the Weirton police, whose investigation ultimately led them to Brokaw. Early in the investigation, Appellee McCartney of the Steubenville Police Department received information from a friend, DEA agent Jim Mavromatis, that Appellant was selling Cooper tires to fellow officers in the Steubenville Police Department. Cooper tires are a brand almost exclusively sold in that region by Ferguson. These transactions involved only cash and were not accompanied by the typical warranties or sales receipts.
On the morning of February 19, 1996, Appellee McCartney confronted Appellant about the tire transactions, advising Appellant that his department and the Weirton police were investigating the matter. Appellant told police that he and Brokaw had been acquainted socially for several years. Appellant also admitted that he had received tires from Brokaw and sold them to fellow officers but insisted that the transactions were legal. Specifically, Appellant maintained that Brokaw told him that the tires were obtained legitimately through a wholesale distributorship.
Eight Steubenville police officers confirmed that they had purchased Cooper tires for cash from Appellant at substantially reduced prices. (Plaintiff's Appendix E, PX-13, Statements of Steubenville Police Officers; and PX-15, Summary Tire Prices).
On the morning that Appellant learned that police were investigating his involvement in the tire transactions, he attempted, unsuccessfully, to contact Brokaw at his home. (Appellees' Brf. App. J-19). Later that same day, after the police questioned him about his relationship with Brokaw, Appellant agreed to contact Brokaw and attempt to arrange a controlled tire purchase. During the recording that police made of Appellant's subsequent telephone conversation with Brokaw, however, Brokaw acted as if he didn't understand what Appellant was talking about. (Plaintiff's Appendix E, PX-9, Transcript, Guy and Brokaw Phone Call).
Police eventually arrested Brokaw even though the controlled tire purchase failed and charged him with stealing Ferguson's tires. Brokaw confessed to police that he stole tires from Ferguson over a period of several years and that he sold them to various individuals, including Appellant. According to Brokaw, Appellant was well aware that the tires were stolen when he purchased them. (Plaintiff's Appendix E, PX-10, Brokaw Statement to Weirton Police 2/19/96-2/20/96). Brokaw further advised police that before Appellant called him to arrange the failed controlled tire purchase, Appellant had already warned Brokaw that the police were involved and that he should "play dumb" during his next telephone call. (Plaintiff's Appendix E, PX-10, Brokaw Statement to Weirton Police 2/19/96-2/20/96).
Appellant was charged with receiving stolen property in violation of R.C. § 2913.51. The matter proceeded to a preliminary hearing that resulted in a finding of probable cause. On August 7, 1996, the municipal court judge who presided over the hearing entered an order binding Appellant over to the Jefferson County Grand Jury. The grand jury, however, refused to indict. While the criminal matter was pending, Appellant was directed not to wear his patrolman's uniform, forbidden from accepting off-duty employment as a uniformed officer, and was reassigned to a desk job with the traffic division.
Appellant initially filed suit in federal district court alleging that Appellees violated his civil rights as provided under 42 U.S.C. § 1983
along with state claims of malicious prosecution and defamation in connection with the above-mentioned incident. The federal court granted summary judgment to Appellees on the civil rights claim and dismissed without prejudice the pendent state claims, which Appellant then re-filed with the court of common pleas.
On February 17, 2000, the trial court granted Appellees' motion for summary judgment on the malicious prosecution claim. The next day, that order was amended to reflect that the court granted summary judgment for Appellees on the defamation claim as well. On February 29, 2000, Appellant filed a Notice of Appeal from the trial court's decision.
Appellant alleges that the trial court erred as follows:
 "THE COMMON PLEAS COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES."
Appellant complains that the trial court erred in granting summary judgment against him on his claims for malicious prosecution and defamation. Appellant argues that genuine issues of material fact remain in this case that foreclose summary judgment. After reviewing the record, this Court must disagree.
The trial court resolved this matter on a motion for summary judgment. This Court subjects a trial court order disposing of a case by way of summary judgment to de novo review without deference to the decision reached by the trial court. Dresher v. Burt (1996), 75 Ohio St.3d 280,293; Bell v. Horton (1996), 113 Ohio App.3d 363, 365.
Summary judgment is a drastic means of terminating litigation and should be undertaken with caution, resolving all doubts against the moving party. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 333. Summary judgment is proper only where the court concludes, after viewing the record in a light most favorable to the nonmoving party, that there exists no genuine issue of material fact and therefore, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304; Civ.R. 56(C).
The party seeking summary judgment must inform the trial court of the basis for its motion and identify the parts of the record that demonstrate that it is entitled to judgment as a matter of law. Dresher,supra. Where the initial burden is met, the nonmoving party must then demonstrate that there is a genuine issue for trial. Lovejoy v. WestfieldNat. Ins. Co. (1996), 116 Ohio App.3d 470, 474, citing Dresher, supra, at 295. To defeat a summary judgment motion, the non-movant must present some evidence to raise a genuine issue of material fact. Nice v.Marysville (1992), 82 Ohio App.3d 109, 116-117. Only in the absence of such evidence is summary judgment proper. Id.
 Malicious Prosecution
Appellant sued Appellees for malicious prosecution. The tort of malicious criminal prosecution allows the complainant to seek redress for harm to his dignity and reputation occasioned by the misuse of criminal proceedings. Criss v. Springfield Twp. (1990), 56 Ohio St.3d 82, 84. Nevertheless, suits for malicious prosecution are not favored because they act as a restraint upon the right to resort to the courts for lawful redress. Woycznski v. Wolf (1983), 11 Ohio App.3d 226, 227 citing,Skarbinski v. Henry H. Krause Co. (6th Cir. 1967), 378 F.2d 656. In Ohio, the requirements are especially stringent.
To prevail on a malicious prosecution claim, a plaintiff must prove the following elements: 1) malice in initiating or continuing the prosecution; (2) lack of probable cause to institute said proceedings; and (3) termination of the prosecution in favor of the criminal defendant.Trussell v. General Motors Corp. (1990), 53 Ohio St.3d 142, 144.
Given that the grand jury chose not to indict Appellant and therefore the case was never tried, the only element of the malicious prosecution tort in dispute is whether Appellees acted with malice and without probable cause in instituting and pursuing the criminal charges. The term "malice," in the context of a claim for malicious prosecution, refers to, "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." Criss v. SpringfieldTwp., supra, at 85. Malice may be inferred where the evidence demonstrates that charges were filed without probable cause. Garza v.Clarion Hotel, Inc. (1997), 119 Ohio App.3d 478, 482; Doty v. Marquis
(Sept. 22, 2000), Jefferson App. No. 99 JE 9, unreported.
While the existence of probable cause is commonly a factual question, the trial court may properly resolve the issue where the evidence is such that reasonable minds could come to but one conclusion. Baryak v.Kirkland (2000), 137 Ohio App.3d 704, 711. Probable cause exists when the facts and circumstances are such that a cautious individual would be warranted in the belief that the person accused is guilty of the offense with which he or she is charged. Huber v. O'Neill (1981), 66 Ohio St.2d 28,30; and Wurth v. Emro Marketing Co. (1998), 125 Ohio App.3d 494, 505.
Whether or not the accused actually committed the crime is not pertinent to a probable cause determination. Finn v. Village of Amelia
(March 27, 1989), Clermont App. No. CA88-10-073, unreported. A police officer may have probable cause even in circumstances where no crime actually occurred. There is also no requirement that the individual who instituted the criminal action possesses evidence that would ensure a conviction. Deoma v. Shaker Heights (1990), 68 Ohio App.3d 72, 77, citingEpling v. Pacific Intermountain Express Co. (1977), 55 Ohio App.2d 59,62.
Probable cause is presumed to exist where there is a prior judicial finding that the accused committed the charged offense. Adamson v. MayCo. (1982), 8 Ohio App.3d 266, 268. A grand jury indictment or bind-over order following a preliminary hearing, for example, is prima facie
evidence of probable cause. Tilberry v. McIntyre, et al. (1999),135 Ohio App.3d 229; McIver v. City of Youngstown (Mar. 1, 1990), Mahoning App. No. 88 CA 205, unreported; Reinoehl v. Trinity UniversalIns. Co. (1998), 130 Ohio App.3d 186, 196; Roque v. Taco Bell, Inc. (Feb. 10, 2000), Cuyahoga App. No. 75413, unreported. Accordingly, a finding of probable cause rendered after a preliminary hearing or an indictment issued by the grand jury will not be disturbed absent a showing that the proceedings were significantly irregular or the finding was tainted by perjured testimony. Adamson, supra, at 268.
To determine whether a criminal prosecution was initiated improperly, this Court must look to the information that prompted the decision to prosecute. Mayes v. Columbus (1995), 105 Ohio App.3d 728, 737. In the instant case, Appellee McCartney received information from DEA agent Jim Mavromatis that Appellant was selling tires for cash at exceedingly low prices to fellow officers on the Steubenville police force. When Appellee McCartney confronted Appellant with this information, Appellant confirmed that he had in fact been selling tires acquired by a friend of his named Brokaw. Ultimately, Brokaw admitted stealing the tires and told police that Appellant knew the tires were stolen.
Appellant was charged with receiving stolen property in violation of R.C. § 2913.51. This section prohibits anyone from receiving, retaining or disposing of, "the property of another [while] knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. § 2913.51(A). The phrase, "reasonable cause to believe," as it is used here imposes a duty upon those coming into contact with possibly stolen items to examine fully and use all facts accessible in order to determine whether the property was stolen. State v. Bundy (1985), 20 Ohio St.3d 51, 53.
Appellant claims that Appellees forced the city prosecutor to pursue criminal charges against him. The city prosecutor however, denies that anyone, "compelled, required, ordered or otherwise forced him to file the criminal charges in question." (Appellees' Brf. App. I, Affidavit of Michael Bednar, ¶ 6). Further, this Court notes that at the time of this incident, Appellant had been an officer with the Steubenville Police Department for eight years. In light of Appellant's professional experience, one would have expected that Brokaw's apparently on-demand access to new tires would have raised some alarm, or at least strong questions.
The unexplained possession of stolen property has long given rise to an inference that the person possessing the property knew it was stolen. See, Barnes v. United States (1973), 412 U.S. 837 (holding that such an inference was constitutional); and State v. Arthur (1975), 42 Ohio St.2d 67
(approving the use of a jury instruction with respect to such an inference). The inference is raised in this matter. It is simply unfathomable that Appellant could have helped Brokaw sell these tires, at such low prices and with no manufacturer's warranty or proof of sale, without harboring some suspicions about their origin.
After a preliminary hearing during which the prosecutor called only Brokaw to testify, the municipal court judge concluded that there was probable cause to bind the case over for the grand jury to decide if it warranted an indictment. Brokaw testified that he sold Appellant approximately 30 sets of stolen Cooper tires over the course of one and one-half to two years. (Plaintiff's Appendix E, PX-10, Brokaw Statement to Weirton Police 2/19/96-2/20/96). During the hearing, Appellant's attorney thoroughly cross-examined Brokaw, thereby exposing the weaknesses of Brokaw's accusations against Appellant. The court had ample opportunity to observe Brokaw throughout the hearing. After both sides gave their respective summations, the presiding judge resolved that there was probable cause to believe that Appellant committed the offense of receiving stolen property.
Appellant relies on the grand jury's subsequent no-bill, or refusal to indict. Appellant further directs this Court to an affidavit by former Jefferson County Prosecutor Steve Stern, and a letter Mr. Stern sent to City Prosecutor Michael Bednar, wherein he characterizes the case against Appellant as weak. Nevertheless, Stern's negative opinion about the case which was first expressed the day after the preliminary hearing where the presiding judge found probable cause in no way undermines this finding. Lacking any other evidence with which to call the results of his preliminary hearing into question, Appellant's malicious prosecution claim must fail.
 Defamation
In his complaint before the court of common pleas, Appellant claimed generally that Appellees' actions defamed him. Typically, in establishing a defamation claim, "a plaintiff must demonstrate the existence of a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in his trade or business." Ashcroft v. Mt. Sinai MedicalCenter (1990), 68 Ohio App.3d 359, 365.
The essential elements of defamation include a false and defamatory statement, publication of that false defamatory statement, injury to the plaintiff as result, and a showing that the defendant acted with the required degree of fault. Celebrezze v. Dayton Newspapers, Inc. (1988),41 Ohio App.3d 343, 346. A plaintiff will only prevail on a defamation claim where he shows that the defendant published a false statement concerning him which harmed his reputation. Ferraro v. Phar-Mor, Inc. (April 7, 2000), Mahoning App. No. 98 CA 48, unreported, citing Herschv. E.W. Scripps Co.(1981), 3 Ohio App.3d 367, 374.
A defamation action is subject to a motion for summary judgment because the determination of whether a particular statement is defamatory is a question of law to be decided by the court. Vail v. The Plain DealerPublishing Co. (1995), 72 Ohio St.3d 279, 649 N.E.2d 182. To overcome a motion for summary judgment in a defamation action, the plaintiff must make a sufficient showing of the existence of every element essential to his cause of action. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 323.
The most obvious problem with Appellant's defamation claim is that he cannot prove the publication element of the tort. In the usual case, a defamation action arises when the defendant broadcasts unpleasant and perhaps untrue things about a plaintiff, thereby stigmatizing the plaintiff. In this case, Appellant does not allege that Appellees published the defamatory information. Rather, Appellant claims that, because of Appellees' malicious decision to charge him, he will be forced, "to repeat, describe, state and publish," the allegedly defamatory statements. (Plaintiff's Complaint, ¶ 21) (emphasis applied).
Appellant acknowledges that his is not a garden-variety defamation claim. Nevertheless, he maintains that a theory of "compelled self-publication," is cognizable here and has been recognized in other jurisdictions in cases where the claimant can show that it is reasonably foreseeable that he will be forced to republish the defamatory information to others in the future. Appellant does not explain how he would be compelled to publish the allegations against him in the future. It would not be a stretch to foresee, though, that Appellant would be required to disclose the fact that he had been arrested and charged with a felony criminal offense to prospective employers. Such "republication" might reasonably be expected to hamper Appellant's future employment aspirations, especially in light of his chosen profession.
Nevertheless, as Appellant concedes, no court in this jurisdiction has yet embraced the idea that an alleged victim of defamation can satisfy the publication element of the tort by publishing it himself, i.e. to prospective employers. Appellant points to Atkinson v. Stop-N-Go Foods,Inc. (1992), 83 Ohio App.3d 132, which does address what it labeled as the "forced republication doctrine."
In Atkinson, however, the court concluded that the doctrine was inapplicable because the plaintiff failed to demonstrate that he had actually republished the allegedly defamatory statement to another. Similarly, in the instant case, there is no evidence that Appellant has actually personally published to others the fact that he was charged with a felony and thereby incurred financial and personal hardship. Appellant is asking this Court to speculate about the matter instead. In Atkinson, the court ultimately found that otherwise defamatory statements made to police regarding an employee who committed a crime are not actionable as long as they were not made with reckless disregard for the truth. Id. at 137.
As in Atkinson, the words at issue in Appellant's case, i.e. the allegations of criminal misconduct, are entitled to a qualified privilege which renders them inactionable. Under R.C. § 2317.05, the "* * * issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading or other document in any criminal or civil cause is * * * privileged." Carlton v. Davisson (1995),104 Ohio App.3d 636. The defense of privilege is a matter of public policy in furtherance of the right of free speech. Burkes v. Stidham
(1995), 107 Ohio App.3d 363, 372; citing, Costanzo v. Gaul (1980),62 Ohio St.2d 106, 108-109.
The qualified privilege under R.C. § 2317.05 applies unless the plaintiff demonstrates that publication of such information was undertaken with actual malice. The phrase "actual malice" in the context of a defamation case is, "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty (1987),32 Ohio St.3d 334, syllabus.
The record in the instant case, which includes a judicial finding of probable cause to believe that Appellant had committed the charged offenses, indicates that the charges were properly pursued.
Inasmuch as Appellant has presented absolutely no evidence to suggest that the pursuit of charges in this case was anything other than a good faith effort to prosecute what appeared to be a crime, the judgment of the Jefferson County Court of Common Pleas granting summary judgment in favor of Appellees was proper and is hereby affirmed.
Donofrio, J., and DeGenaro, J., concur.