OPINION OF THE COURT
Aldo A. Nastasi, J.
The operative facts are not in dispute. The defendant Mid-Hudson Better Business Bureau (herinafter Bureau) is a not-for-profit organization supported by the local business community which seeks to bring consumers and businesses together *498 by mediating disputes between them to the end of resolving the dispute. It has no coercive powers and relies instead on its efforts to open a dialogue between the two parties. Consumer complaints are generally telephonically communicated to the Bureau which then triggers the informal complaint mediation procedures of the Bureau, to wit, eliciting the details of the complaints in writing, either in letter form or on a Bureau complaint form supplied. The complainants are also asked to provide documentation, if available and pertinent. Once the written complaint is received by the Bureau, it is entered into its computer system, and a copy is mailed to the subject company. In this first mailing, the Bureau solicits from the company a response or explanation of its position concerning the consumer complaint. If no response is received, approximately 30 days later the Bureau sends a second request to the company. If no response is received during the ensuing two-to-four-week period, the complainant is so notified by the Bureau. The complaint is then closed as a "no response” complaint unless the consumer advises the Bureau that the complaint was resolved.
If the Bureau notices a pattern of "no response” complaints in a particular company’s file, then the Bureau mails a certified return receipt letter to that company indicating that, as a result of its failure to respond to the complaints, the Bureau intends to issue it an "unsatisfactory” rating. The Bureau again requests a response from the company and gives it yet another opportunity to respond.
In fact, the Bureau has three types of consumer ratings for businesses, based on the file history of a company for the past three years, although it clearly does not endorse, recommend or disapprove of any product, service or company. Generally, a "satisfactory” rating is given to companies which have been in business for at least one year, have voluntarily provided the Bureau with information about their business, have no unusual volume or pattern of complaints, and respond promptly to any complaints filed with the Bureau. In addition, to obtain a "satisfactory” rating the company must not have been the subject of a major law enforcement action involving the business-consumer relationship which materially calls into question its marketplace integrity. If the company was the subject of a Bureau investigation or advertising challenge, it must have substantiated its claims or modified its practices to the Bureau’s satisfaction.
An "unsatisfactory” rating is given to companies which *499 have an unusually high volume of complaints, fail to respond to two or more complaints, answer complaints but fail to resolve the customer’s problem in a high percentage of the cases, or fail to eliminate the underlying cause of complaints. This rating is also given to companies which are the subject of one or more major law enforcement actions involving the consumer-business relationship which materially call into question the company’s marketplace integrity. Finally, this rating is also given to companies that fail to substantiate or modify misleading selling and advertising practices. The Bureau issues this rating to companies who knowingly misuse the Bureau’s name or, if precommitted to binding arbitration, fail to perform or satisfy an arbitration award.
Finally, a company may not qualify for either a "satisfactory” or "unsatisfactory” rating in the absence of sufficient information or the record falls somewhere in between "satisfactory” and "unsatisfactory”. In these cases, the Bureau merely describes the nature of the business and gives any complaint history, patterns or other relevant information.
Within this operational context, it cannot be gainsaid that at the time of the instant application, the Bureau had received six consumer complaints concerning plaintiff Elite Funding Corp. (hereinafter Elite) and its operations: the Levene complaint in December 1991, the Silverman complaint and the Cunningham complaint in May 1992, the Sylvester complaint and the Somos complaint in August 1992 and finally the Esposito complaint which was received after the instant action was commenced. In each instance the Bureau wrote to Elite informing it that it had received a complaint and describing its nature. Then, lacking a response, a second notice was forwarded to Elite. In each instance, the complaint file was closed as a "no response”. On July 13, 1992, after the first three "no response” files (Levene, Silverman and Cunningham), the Bureau sent a certified letter to Elite informing it that, if no responses were received by the Bureau before July 27, 1992, the Bureau file report on Elite would reflect an "unsatisfactory” rating. Again, the Bureau received no response from Elite. Thereafter the Sylvester and Somos files were closed as "no response”.
In August 1993, the Bureau informed Elite that, in order to correct its "unsatisfactory” rating, Elite need only respond to the substance of the five listed complaints, still unresolved at that time, or, alternatively, provide information from the Banking Department that these complaints had been satisfied. *500 The Bureau agreed that if it received either information within two weeks, Elite’s "unsatisfactory” rating would be removed. Elite never responded.
After Elite commenced this action, the Bureau received the Esposito complaint. Once again Elite did not respond to the Bureau’s two separate sequential notifications concerning the Esposito complaint.
The complaint at bar seeks to recover monetary damages from defendant Bureau in the sum of $100,000. Plaintiff Elite alleges that the Bureau made "numerous unfounded false and disparaging statements of fact against the plaintiff. The substance of the statements were that Elite Funding Corp. was an 'unsatisfactory’ company with whom to do business and/or that Elite Funding Corp. had an 'unsatisfactory’ rating with the defendant’s organization, or words of similar import and effect”, thereby implying that Elite was "incompetent and/or dishonest in its business practices”. Plaintiff contends that defendant knew that the statements were not privileged and false when made and/or made the statements with a gross and reckless disregard for the truth or veracity thereof and in derogation of the rules and procedures of the defendant’s organization and that the statements tend to damage the plaintiff in its trade, business or profession, to wit, the provision of mortgage brokerage services, and that it has suffered monetary damages in its trade, business and profession, as a result.
The defendant Bureau contends that based upon the six unresponded to customer complaints, the Bureau file report on Elite accurately states that the company has an "unsatisfactory” record because of its pattern of not responding to customer complaints. Quite notably, the file report also states that the Bureau "does not endorse, recommend, or disapprove of any product, service or company”. The Bureau further contends that it gave Elite multiple opportunities to correct its rating, none of which were accepted, and that it never acted with malice towards Elite. Indeed, it was not until the Bureau received and passed on numerous complaints, without a single response from Elite, that it gave Elite an "unsatisfactory” rating. Based upon the history of dealings between the Bureau and Elite, defendant Bureau concludes the statements in the file report are a statement of its opinion as to Elite’s complaint-handling history: unsatisfactory. This opinion is based upon the long-established history of the Bureau’s com *501 munications to Elite and the latter’s patent failure to respond to customer complaints. In short, it is true.
The defendant Bureau now moves for summary judgment dismissing the complaint. The plaintiff cross moves for summary judgment and an assessment of damages.
It is well settled that the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (see, e.g., Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853, on remand 111 AD2d 138; Zuckerman v City of New York, 49 NY2d 557, 562). When, however, a moving party has demonstrated entitlement to judgment, the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action (Alvarez v Prospect Hosp., 68 NY2d 320, 327; Zuckerman v City of New York, supra, at 560). Conclusory averments of fact or law are insufficient (Century Ctr. v Davis, 100 AD2d 564, 565).
Here the uncontroverted evidence establishes beyond cavil that the allegedly defamatory statements were, in fact, true. Moreover, even assuming arguendo that the statements were false, the Bureau is nonetheless entitled to summary judgment because it enjoys two privileges against ordinary defamation claims: a qualified "common interest” privilege and a constitutional "fair comment” privilege. To overcome these privileges, plaintiff must produce evidence that the Bureau acted with "express malice” or "actual ill-will”. Plaintiff simply cannot do so. Thus, the Bureau is entitled to summary judgment dismissing the complaint.
It is well settled that truth is a complete defense to a claim of defamation (Bingham v Gaynor, 203 NY 27; Von Gerichten v Long Is. Advance, 202 AD2d 495, 496; Love v Morrow & Co., 193 AD2d 586; Licitra v Faraldo, 130 AD2d 555, 556). Thus, in order for plaintiff to proceed against defendant for defamation, the published communication must in the first instance be false. However, it cannot be gainsaid that upon the uncontradicted evidence in the case at bar, the allegedly defamatory statements were truthful.
Moreover, even were this court to find that the challenged statements were not absolutely true, the defendant Bureau would nevertheless be entitled to summary judgment in the absence of any evidence whatsoever of express malice since the Bureau is entitled to the protection of a qualified privilege under the law of this State.
*502 It has long been held in this State that the communications of a better business organization to, inter alla, members of the public who request information are "qualifiedly privileged” as defined in Shapiro v Health Ins. Plan (7 NY2d 56, 60-61). Thus the defendant Bureau is entitled to this so-called "common interest” qualified privilege.* (Trim-A-Way Figure Contouring v National Better Bus. Bur., 37 AD2d 43, 45; see also, Lee Org. v Council of Better Bus. Burs., 74 Misc 2d 363, 365.)
Therefore it is incumbent upon plaintiff to produce evidentiary facts from which it might be found that the publication was not only false but actuated by express malice or actual ill-will (Williams v Tritschler, 184 AD2d 690, 691; Garson v Hendlin, 141 AD2d 55, 63; Kaplan v MacNamara, 116 AD2d 626, 627; Trim-A-Way Figure Contouring v National Better Bus. Bur., supra, at 45). "Actual malice” necessitates proof of personal spite, ill-will or culpable recklessness or negligence (see, Dos v St. John’s Episcopal Hosp., 199 AD2d 460, 461; Hollander v Cayton, 145 AD2d 605, 606). There is nothing, however, before this court to establish the requisite state of mind. Conclusory averments, surmise, conjecture or suspicion simply will not suffice (Kamerman v Kolt, 210 AD2d 454 [2d Dept 1994]; Garson v Hendlin, supra, at 63-65; Mihlovan v Grozavu, 131 AD2d 550, 550-552; Mock v LaGuardia Hosp.-Hip Hosp., 117 AD2d 721, 722; Lee Org. v Council of Better Bus. Burs., supra, at 365-366).
Finally, the court must agree that the challenged statements are also protected by the constitutional privilege of "fair comment” as an expression of opinion based upon stated facts and not actionable (see, Brian v Richardson, 211 AD2d 413 [1st Dept 1995]; Rothman v Sternberg, 207 AD2d 438 [2d Dept 1994]; Hollander v Cayton, supra, at 606; Wehringer v Newman, 60 AD2d 385, 390; see also, Held v Pokorny, 583 F Supp 1038 [SD NY 1984]; Kutz v Independent Publ. Co., 97 NM 243, 245, 638 P2d 1088, 1090). Such opinions are absolutely protected under the Federal Constitution and Constitution of the State of New York (see, Immuno AG. v MoorJankowski, 77 NY2d 235, cert denied 500 US 954; see also, Rothman v Sternberg, supra; Rappaport v VV Publ. Corp., 163 Misc 2d 1). Moreover, even if said to be a qualified one, to overcome the privilege of fair comment, the plaintiff must *503 again produce evidentiary facts establishing malice on the part of the defendant (Wehringer v Newman, supra, at 390, 391-392; Lee Org. v Council of Better Bus. Burs., supra, at 366-367). As heretofore set forth, this plaintiff simply cannot do.
Accordingly for all of the aforesaid reasons, the motion by defendant for summary judgment dismissing the complaint is granted and the complaint is hereby dismissed. The cross motion is denied in all respects.

 Plaintiffs contention that the Bureau is somehow not entitled to this qualified privilege because plaintiff is otherwise subject to regulation by the State Banking Department and the Bureau is "not needed” to protect the public interest is simply untenable and warrants no further discussion.