CASTLE ROCK REMODELING,
LLC, Appellant,

v.

BETTER BUSINESS BUREAU
OF GREATER ST. LOUIS,
INC., Respondent.

No. ED 96214.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 1, 2011.

Application for Transfer to Supreme Court
Denied Dec. 12, 2011.

Al W. Johnson, St. Louis, MO, for Appellant.

Joseph E. Martineau, St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Presiding Judge.

Castle Rock Remodeling, LLC ("Castle Rock") appeals from the judgment dismissing its claims for libel/slander and tortious interference with business expectancy against the Better Business Bureau of Greater St. Louis, Inc. ("BBB"). We affirm.

Castle Rock is a business engaged in retail sales and installation of windows and doors. BBB is a non-profit corporation that, *inter alia,* compiles consumer complaints about businesses, rates businesses on an A through F scale based on various criteria, and makes that information available to consumers through BBB's website. Businesses who meet a certain rating level, comply with BBB's code of conduct, and pay a membership fee can be "accredited" by BBB.

Castle Rock filed a petition against BBB for money damages alleging libel/slander and tortious interference with business expectancy based on BBB's reliability report on Castle Rock giving Castle Rock a "C" rating[1] as well as statements regarding seventeen complaints filed against Castle

---

1. In early 2009, BBB modified its evaluation and reporting system to include the assignment of a grade to each business using an A through F scale.

Rock, BBB's concerns over Castle Rock's advertising, and the expiration of Castle Rock's accreditation. Castle Rock also sought declaratory judgment requiring BBB to give it an "A" rating and BBB accreditation.

Castle Rock pleaded an extensive history between Castle Rock and BBB. Between 2002 and April of 2010, Castle Rock was a member and accredited business of BBB and paid yearly dues to BBB. Castle Rock alleged Castle Rock's CEO had a falling out with BBB in 2008 after Castle Rock's CEO "became more vocal about his opposition to the manner in which complaints were being placed on Castle Rock's public record." Essentially, Castle Rock alleged that after this falling out BBB gave Castle Rock a negative report and forced Castle Rock to resign its accreditation.

Specifically, Castle Rock asserted BBB's report and the "C" rating it gave Castle Rock directly states or implies that Castle Rock (a) is a generally unreliable firm which has recently lost its accreditation with BBB, (b) has numerous complaints filed against it, and has not responded in a timely manner or has demonstrated bad faith in an effort to resolve the complaints, (c) has failed to resolve the underlying cause or causes of the pattern of complaints, and (d) regularly engages in deceptive advertising and only changes their policies when admonished by BBB.

Castle Rock attached its BBB report to its First Amended Petition along with BBB's ratings system. BBB specifically advises that:

> [t]he BBB rating is a grade based on a proprietary formula that uses information known to BBB and incorporates BBB experience with the business. The formula evaluates numerous categories of information, and reflects BBB weightings as to the relative importance of each category. This rating represents BBB's degree of confidence the business is operating in a trustworthy manner and will make a good faith effort to resolve any customer concerns fil[ ]ed with BBB.

BBB explains that it rates businesses based on seventeen elements including: type of business; time in business; competency licensing; complaint volume; unanswered complaints; unresolved complaints; serious complaints; complaint analysis; complaint resolution delayed; failure to address complaint pattern; government action; advertising review; background information; clear understanding of business; mediation/arbitration; accredited business status; and revocation. In its explanation of the elements and how it evaluates them, BBB often used the phrases like "in BBB's judgment," "determined by BBB judgment," "BBB uses its judgment in assessing," and "BBB's will use their judgment."

The BBB reliability report for Castle Rock showed Castle Rock had a BBB rating of "C." The report stated that the reasons for this rating include "17 complaints filed against business," and "[a]dvertising issue(s) found by BBB." The report also stated that Castle Rock's "accreditation expired on 04/27/2010."

With regard to the complaints, the report showed that BBB processed a total of seventeen consumer complaints against Castle Rock in the last thirty-six months and that the complaints were closed in the last thirty-six months with three closed in the last year. The report noted that the complaints concerned various issues: six concerned service issues; three concerned contract issues; three concerned product issues; two concerned repair issues; one concerned billing or collection issues; one concerned customer service issues; and one concerned sales practice issues. Of

these seventeen complaints, the report identified that 11 of them were "Resolved."

In detailing Castle Rock's complaint history, the report stated "[w]hen considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of the complaints and a firm's response to them are often more important than the number of complaints."

The report also noted that BBB "challenged some advertised claims of the company concerning a price discount" and "savings claims" which "had the capacity to mislead consumers," and that Castle Rock "agreed to modify its advertisements to comply with the [BBB] Code [of Advertising]." Specifically, the report stated:

> [BBB] has challenged some advertised claims of this company concerning a price discount. We pointed out that that the Code of Advertising states, Advertisers may offer a price reduction or saving by comparing their selling price with: (a) their own former selling price[;] (b) the current selling price of identical merchandise sold by others in the market area[;] (c) the current selling price of comparable merchandise sold by the advertiser or by others in the market area. The company has agreed to modify its advertisement to comply with the Code.

> [BBB] has questioned an advertised claim with this company concerning a range of savings. [ ] BBB brought to the firm's attention that advertisements concerning up to savings claims have the capacity to mislead consumers when the ad contains an undue or misleading display of the maximum savings amount. The company has agreed to modify its advertisement.

The reliability report also set forth the following in describing BBB's rating process:

> Ratings are determined by a proprietary formula that represents BBB's opinion as to (1) the importance of each category, and (2) the appropriate score given to the business for each category.

> \* \* \*

> BBB's rating of a business reflects BBB's opinion about the business based on information in our files and BBB experience. The rating is not a guarantee of a business' reliability or performance, and readers should consider a business' rating in addition to all other available information about the business.

The report further stated that "BBB Reliability Reports are provided solely to assist you in exercising your own best judgment."

In response to Castle Rock's petition, BBB filed a motion to dismiss for failure to state a claim upon which relief can be granted. BBB asserted that any alleged defamatory statements about Castle Rock by BBB were opinion, and thus, not actionable. As to Castle Rock's claim of tortious interference with business expectancy, BBB also asserted Castle Rock could not establish the absence of justification or that BBB employed improper means when it published its report. The trial court granted BBB's motion and dismissed Castle Rock's petition with prejudice. Castle Rock appeals the dismissal of its claims for libel/slander and tortious interferences with business expectancy.[2]

■■■ Our review of the trial court's grant of a motion to dismiss for failure to state a claim is *de novo. Diehl v. Fred Weber, Inc.,* 309 S.W.3d 309, 321 (Mo.App. E.D.2010). The propriety of the trial

---

**2.** Castle Rock has not appealed the dismissal of the declaratory judgment claim.

court's ruling on such a motion rests solely on the adequacy of the plaintiff's petition. *Id.* The facts contained in the plaintiff's petition are treated as true and are construed liberally in favor of the plaintiff to determine if they meet the elements of a recognized cause of action or of a cause that might be adopted in the case. *Id.* If the plaintiff's petition sets forth any set of facts that, if proven, would entitle him to relief, then the petition states a claim. *Id.*

We will address Castle Rock's points out of order and begin by addressing its second point because its disposition affects the other points on appeal. In its second point, Castle Rock argues the trial court erred "in granting [BBB's] motion to dismiss because Castle Rock's petition states a cause of action for defamation, and thus for the other counts in that [ ] BBB's representations are either statements of fact or are actionable statements of opinion which necessarily imply the existence of undisclosed defamatory facts."

■ In Missouri, the elements of defamation are: (1) publication, (2) of a defamatory statement, (3) which identifies the plaintiff, (4) that is false, (5) that is published with a requisite degree of fault and (6) damages the plaintiff's reputation. *Sterling v. Rust Communications,* 113 S.W.3d 279, 281 (Mo.App. E.D.2003) (citing *Nazeri v. Missouri Valley College,* 860 S.W.2d 303 (Mo. banc 1993)).

■ The focus of this appeal is whether there was a "defamatory statement." In determining whether a plaintiff can survive a motion to dismiss a defamation claim for failure to state a cause of action, there are two primary components. First, we must determine whether the statement is capable of having a defamatory meaning. *Pape v. Reither,* 918 S.W.2d 376, 379 (Mo. App. E.D.1996). Whether language is defamatory and actionable is a question of law. *Sterling,* 113 S.W.3d at 281 (citing

*Pape,* 918 S.W.2d at 379). Therefore, courts are empowered to determine whether an allegedly libelous statement is capable of a defamatory meaning. *Ribaudo v. Bauer,* 982 S.W.2d 701, 704 (Mo.App. E.D. 1998).

■ In determining whether a statement is defamatory, the words must be stripped of any pleaded innuendo and construed in their most innocent sense. *State ex rel. Diehl v. Kintz,* 162 S.W.3d 152, 155 (Mo.App. E.D.2005) (citing *Nazeri,* 860 S.W.2d at 311). The alleged defamatory words must also be considered in context, and the words are given their plain and ordinarily understood meaning. *Id.* The alleged defamatory words " 'are taken in the sense which is most obvious and natural and according to [the] ideas they are calculated to convey to those to whom they are addressed.' " *Nazeri,* 860 S.W.2d at 311 (quoting *Kirk v. Ebenhoch,* 354 Mo. 762, 191 S.W.2d 643, 645 (1945)). "While these standards are not absolutely consistent, [ ] they should be read together." *Nazeri,* 860 S.W.2d at 311. If a statement is capable of a nondefamatory meaning, and can be reasonably construed in an innocent sense, we must hold the statement nonactionable as a matter of law. *Mandel v. O'Connor,* 99 S.W.3d 33, 36 (Mo.App. E.D.2003) (citing *Ampleman v. Scheweppe,* 972 S.W.2d 329, 333 (Mo.App. E.D.1998)).

Castle Rock complained about factual statements, as well as the BBB's rating for Castle Rock. As to the factual statements, Castle Rock identified four statements to support its claim of defamation. First, Castle Rock alleged "[ ] BBB publishes a C rating for Castle Rock based on 17 complaints filed against the business, and 'advertising issues.' " Second, Castle Rock pointed to the statement on BBB's website that "nature of the complaints and [the

firm's] response to them are more important than the number of complaints." Third, Castle Rock pleaded BBB's website states that it has "challenged some advertising claims of this company concerning a price discount," and "has questioned an advertising claim with this company concerning a range of savings" with BBB following both of those statements with "[t]he company has agreed to modify its advertisement to comply with the Code." Fourth, Castle Rock points to the statement on the BBB's report for Castle Rock that notes Castle Rocks "accreditation" expired on April 27, 2010. Castle Rock then generally alleged that "[o]ne or more of the aforedescribed statements are false and defendant BBB is at fault for publishing the statements."

Following its recitation of these statements from the BBB report, Castle Rock asserted in its petition that these statements "taken together," "directly state or strongly imply" that: Castle Rock is a generally unreliable firm which has recently lost its accreditation with BBB; it had numerous complaints filed against it, and had not responded in a timely manner or had demonstrated bad faith in an effort to resolve the complaints; Castle Rock has failed to resolve the underlying cause or causes of the pattern of complaints; and had regularly engaged in deceptive advertising and had only changed their policies when admonished by BBB.

Contrary to Castle Rock's assertions, several factual statements are not defamatory when stripped of the pleaded innuendo and read in their most innocent sense. Furthermore, even if some of factual statements were defamatory, the statements are true. "Falsity is an element of a prima facie defamation claim." *Sterling*, 113 S.W.3d at 283.

■ First, Castle Rock acknowledges that it has been the subject of at least seventeen consumer complaints indicated in the report. Castle Rock's contention that the complaints are "illegitimate" or "frivolous" does not make any of the statements false or actionable as defamation. In addition, Castle Rock also admitted that BBB had concerns about its advertising and challenged some advertising claims of Castle Rock. Castle Rock did not dispute the claims and that it did modify its advertising. Because falsity is an element of a defamation claim, Castle Rock cannot maintain a cause of action based on this factual statement. *See Id.*

■ Second, the statement in the report that the nature of the complaints and the business response to them is often more important than the number of complaints is not specific to Castle Rock, and thus, cannot be considered defamatory. In order to be defamatory, a statement must be clear as to the person addressed. *Sterling*, 113 S.W.3d at 283.

■ Thirdly, with regard to the accreditation statement, the factual statement in and of itself is not defamatory because there is no legal requirement that a business be accredited by BBB and many reputable businesses are not accredited by BBB. Moreover, Castle Rock acknowledged that its accreditation ended in April 2010. The statement in the BBB report is not false and cannot be the basis of a defamation claim. *See Id.*

In conclusion, we find these factual statements in the BBB report on Castle Rock are either capable of non defamatory meaning or true and, therefore, find the statements non actionable as a matter of law. *Sterling*, 113 S.W.3d at 283.

The final issue to determine is whether the BBB's "C" rating of Castle Rock can support Castle Rock's defamation claim. As both Castle Rock and BBB point out, there is no Missouri case addressing the

specific issue of whether a rating or grade can be the basis of a defamation claim.

 Assuming the rating is capable of a defamatory meaning, we must also inquire if one or more privileges would shelter the defendant from legal action. *Ribaudo*, 982 S.W.2d at 704. These privileges have primarily arisen from various protections offered by the First Amendment to the United States Constitution. *Id.* They include the absolute privilege accorded statements of opinion, which even if made maliciously or insincerely, do not give rise to a libel cause of action. *Id.* (citing *Pape*, 918 S.W.2d at 380). Missouri recognizes one exception to this general rule. The privilege does not apply when the statement of opinion implies the existence of undisclosed defamatory facts. *Id.*

 The test applied to determine if a statement is opinion is " 'whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact.' " *Ribaudo*, 982 S.W.2d at 705 (quoting *Nazeri*, 860 S.W.2d at 314 and citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)). "The issue of falsity relates to the *defamatory* facts implied by the statement—in other words, whether the underlying statement about the plain-

tiff is demonstrably false." *Nazeri*, 860 S.W.2d at 314 (emphasis in original). The determination of whether a statement is a pure opinion or an assertion of fact is a question of law. *Sterling*, 113 S.W.3d at 281–82. The court must examine the totality of the circumstances to determine whether the ordinary reader would have treated the statement as opinion. *Id.* at 282; *Ribaudo*, 982 S.W.2d at 705.

Thus, we must determine whether the BBB "C" rating could reasonably have been interpreted as stating actual facts about Castle Rock capable of being proven true or false. Other courts have considered the issue of whether a rating or grade can be the basis of a defamation claim and found that claims for defamation based upon ratings or grades fail because a rating or a grade cannot be objectively verified as true or false and thus, are opinion accorded absolute privilege.[3]

We find *Browne v. Avvo, Inc.* 525 F.Supp.2d 1249, 1251–53 (W.D.Wa.2007), particularly instructive on this issue. In *Browne*, the plaintiffs claimed defamation based on the defendants' website, on which information about attorneys and a comparative rating system appears. *Browne*, 525 F.Supp.2d at 1250. The defendants moved to dismiss the complaint for failure to state a claim arguing the opinions expressed

---

3. *See Compuware Corp. v. Moody's Investors Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007)(court affirmed summary judgment dismissing the plaintiff's defamation claim because the defendant's credit rating constituted an opinion that depended upon the subjective weight given to numerous factors and did not communicate any provably false fact); *Aviation Charter, Inc. v. Aviation Research Group*, 416 F.3d 864, 868–71 (8th Cir.2005)(discussed above); *Browne v. Avvo, Inc.* 525 F.Supp.2d 1249, 1251–53 (W.D.Wa.2007)(discussed above); *ZL Techs., Inc. v. Gartner, Inc.*, 709 F.Supp.2d 789, 795–99 (N.D.Cal. 2010)(court dismissed the plaintiff's claims of defamation and libel based upon its ranking

as a "niche" player, the lowest ranking possible on the defendant's rating scale, because the ranking was not objectively verifiable fact, but was protected opinion even with allegations that the ranking was "affected by an inherent bias"); *Kronenberg v. Baker & McKenzie, LLP*, 692 F.Supp.2d 994, 998 (N.D.Ill.2010)(performance evaluation ratings of "meets some expectations" or "does not meet expectations" are not facts capable of objective verification and therefore, are protected opinion as well as statements that one "has difficulty working with others," does not "allow [ ] proper supervision," and failed to work as a "team player.")

through the rating system are absolutely protected by the First Amendment and could not serve as the basis for liability. *Id.* at 1250–51. The court noted the key issue was whether the challenged statement could reasonably have been interpreted as stating actual facts about the plaintiffs. *Id.* at 1251. The court applied the three-part test developed by the Ninth Circuit using the standard set forth in *Milkovich* for determining whether a reasonable factfinder could conclude the statement implies an assertion of objective fact: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false. *Id.*

In its analysis of the ratings, the court noted that the defendants' website contained numerous reminders that the rating system is subjective by describing the ratings as an assessment or judgment. *Id.* at 1252. The court specifically noted "the underlying data is weighted based on [the defendant's] subjective opinions regarding the relative importance of various attributes, such as experience, disciplinary proceedings, client evaluations, and self-promotion." *Id.* The court concluded "[n]either the nature of the information provided nor the language used on the website would lead a reasonable person to believe that the ratings are a statement of actual fact." *Id.* The court stated that this conclusion was bolstered by the fact that the rating system was an abstraction and not sufficiently factual to be proved or disproved. *Id.* The court stated "[o]ne may disagree with [the] defendants' evaluation of the underlying objective facts, but the rating itself cannot be proved true or false." *Id.* Thus, the court held the defendant's rating system was opinion protect-

ed by the First Amendment, which precluded the plaintiffs' causes of action. *Id.* at 1253.

We also find *Aviation Charter, Inc. v. Aviation Research Group,* 416 F.3d 864, 868–71 (8th Cir.2005), instructive. In *Aviation Charter, Inc.,* the defendant, who published and sold safety ratings for air charter service providers, assigned the lowest possible rating to the plaintiff, representing that "Aviating Charter, relative to other carriers of its size, has an unfavorable safety record." *Aviation Charter, Inc.,* 416 F.3d at 867–68. The plaintiff filed a petition for defamation based upon the adverse safety rating and seven other statements in a newspaper article, and thereafter, summary judgment was granted in favor of the defendant. *Id.* The court stated its analysis was to examine whether the rating and comparison was " 'sufficiently factual to be susceptible of being proved true or false.' " *Id.* at 870 (quoting *Milkovich,* 497 U.S. at 21, 110 S.Ct. 2695). The court held that, although the defendant's rating relied on objectively verifiable data, the interpretation of that data was ultimately a subjective assessment and not an objectively verifiable fact. *Id.* The court concluded that because the rating was "a subjective interpretation of multiple objective data points leading to a subjective conclusion about aviation safety," and because the First Amendment absolutely protects statements that are not provably false, the plaintiff's defamation claim failed as a matter of law. *Id.* at 871.

■ As in *Browne* and *Aviation Charter, Inc.,* BBB's rating system relies on objective and subjective components, and BBB's weighting of the objective data. As in *Browne,* BBB's report is clear that the impression of the rating is opinion and that "BBB's rating of a business reflects the BBB's opinion about the business" and

BBB's judgment. Like the defendant's rating in *Browne*, it is clear that the BBB rating is based on "an evaluating process" and "subjective opinion." *See Browne*, 525 F.Supp.2d at 1252. Thus, neither the nature of the information provided nor the language used on BBB's website would lead a reasonable person to believe that the rating is a statement of actual fact.

Moreover, like the ratings in *Browne* and *Aviation Charter, Inc.*, BBB's "C" rating of Castle Rock is not sufficiently factual to be susceptible of being proved true or false. Although one may disagree with BBB's evaluation of the underlying objective facts, the rating itself cannot be proved true or false. Therefore, the rating is protected as opinion under the First Amendment.

Therefore, the trial court did not err in dismissing Castle Rock's claim for libel because none of the asserted factual statements or the rating was actionable as defamation. Point denied.

Next we address Castle Rock's remaining points. In its first point, Castle Rock asserts the trial court erred "in granting [BBB's] motion to dismiss because Castle Rock's petition states a cause of action for defamation per se." Castle Rock contends BBB's representations "impute a lack of knowledge, skill, capacity, or fitness to perform one's duties, and fraud, want of integrity, or misconduct in the line of Castle Rock's calling and thus Castle Rock should be entitled to further build its case through discovery."

Castle Rock contends that the fact-versus—opinion determination should only be made after more discovery and the trial court prematurely dismissed its cause of action. While further discovery may be appropriate in some cases, there is precedent rejecting the notion that a determination at the motion to dismiss is inappropriate. In *Pape*, this court affirmed the

dismissal of a defamation claim holding that certain statements at issue were protected opinion. *Pape*, 918 S.W.2d at 383. In addition, in *Sterling*, this court affirmed the dismissal of a defamation claim where the statements were found true or opinion. *Sterling*, 113 S.W.3d at 281–83. Furthermore, in *Henry v. Halliburton*, 690 S.W.2d 775, 790 (Mo. banc 1985), the court affirmed the dismissal of a defamation claim on the pleadings after considering the totality of the circumstances, the court found the statements were expressions of opinion not actionable. *See also Diez v. Pearson*, 834 S.W.2d 250 (Mo.App. E.D.1992); *Iverson v. Crow*, 639 S.W.2d 118 (Mo.App. E.D.1982); *Anton v. St. Louis Suburban Newspapers, Inc.*, 598 S.W.2d 493 (Mo.App.E.D.1980).

■ Here, the trial court concluded and this court agrees that the statements were either true or opinion and therefore, not actionable. Thus, the trial court did not err in granting BBB's motion to dismiss and in dismissing Castle Rock's libel claim for failure to state a cause of action. Point denied.

In its third point, Castle Rock contends the trial court erred "in granting [BBB's] motion to dismiss because Castle Rock's petition states a cause of action for defamation in that [ ] BBB did not act in good faith in its dealings with and evaluation of Castle Rock."

Castle Rock argues BBB manipulated its standards, treated it differently than other business, and insincerely and maliciously gave it a "C" rating, rather than the higher rating it claims it deserved. Castle Rock argues at length that BBB's ratings should only be given a qualified or conditional privilege citing *Patio World v. Better Business Bureau, Inc.*, 43 Ohio App.3d 6, 538 N.E.2d 1098, 1103 (Ohio App. 2 Dist.1989); *Antwerp Diamond Ex-*

*change of America Inc. v. Better Business Bureau of Maricopa County, Inc.*, 130 Ariz. 523, 637 P.2d 733, 739 (1981) allowing Castle to prove malice or bad faith on the part of BBB.

However, a review of the case law cited by Castle Rock and other case law involving the Better Business Bureaus from other states, none of which involved a rating case, shows that a qualified privilege only applies to factual statements that are false.[4] In those circumstances, a qualified privilege exists under which the plaintiff is required to prove actual malice, i.e. knowledge of the falsity or publication of false statements while having serious doubts about their truth. *See* MAI 23.06(1) Notes on Use and MAI 23.06(2)(Verdict Director for Libel); *McDowell v. Credit Bureaus of Southeast Mo., Inc.*, 747 S.W.2d 630 (Mo. banc 1988)(defamation plaintiff suing credit report agency over false factual statement that plaintiff had filed for bankruptcy required to prove actual malice to recover damages). However, statements of opinion are protected by an absolute privilege even if the statements are "made maliciously or insincerely." *Pape*, 918 S.W.2d at 380; *Sterling*, 113 S.W.3d at 281. The cases relied on by Castle Rock for its malice argument are applicable only after the statement at issue is found to be defamatory and not a subjective statement of opinion, like the rating at issue in this case.

In *Patio World*, the principal case relied on by Castle Rock, the court made a distinction between a statement of opinion entitled to constitutional protection and a factual statement that was entitled to a qualified privilege. In *Patio World*, the court affirmed the dismissal of the plaintiff's claim based on the defendant's statements that the plaintiff had an "unsatisfactory business performance record" and had "a pattern of failure to eliminate causes of customer complaints," noting that "BBB's characterization of the plaintiff's performance was fair comment or an expression of opinion entitled to constitutional protection." *Patio World*, 538 N.E.2d at 1103. With respect to another factual statement that the plaintiff "made no effort to resolve complaints," the court found the defendant was only entitled to a qualified privilege where there was evidence to show that this was false and the defendant knew it was false, and thus, the court reversed summary judgment as to that statement to allow the plaintiff to show the statement was false and published with malice. *Id.* at 1103–04.

Under the circumstances presented here where the only factual statements in Castle Rock's pleadings were either not defamatory or true and the allegation regarding the "C" rating was opinion protected by the First Amendment, the qualified privilege is not at issue.[5] The trial

---

4. *See Patio World v. Better Business Bureau, Inc.*, 43 Ohio App.3d 6, 538 N.E.2d 1098 (Ohio App. 2 Dist.1989); *Antwerp Diamond Exchange of America, Inc. v. Better Business Bureau of Maricopa County, Inc.*, 130 Ariz. 523, 637 P.2d 733 (1981); *Ohio State Home Services, Inc. v. Better Business Bureau of Akron, Inc.*, 89 Ohio App.3d 732, 627 N.E.2d 602 (Ohio App. 9 Dist.1993); *Bartels v. Retail Credit Co.*, 185 Neb. 304, 175 N.W.2d 292 (1970); *Trim–A–Wav Figure Contouring, Ltd. v. National Better Business Bureau, Inc.*, 37 A.D.2d 43, 322 N.Y.S.2d 154 (N.Y.A.D.1971);

*Elite Funding Corp. v. Mid–Hudson Better Business Bureau*, 629 N.Y.S.2d 611 (N.Y.Sup. 1995).

5. Castle Rock argues at some length that the dichotomy between opinion and fact in the defamation realm no longer exists after the *Milkovich* case. However, *Milkovich* did not erase the First Amendment protection for opinion that does not imply an assertion of objective fact and that is not provable as false. *Milkovich*, 497 U.S. at 18, 110 S.Ct. 2695.

court did not err in dismissing Castle Rock's libel claim. Point denied.

In its fourth and final point, Castle Rock maintains the trial court erred "in granting [BBB's] motion to dismiss because Castle Rock's petition states a cause of action for [tortious] interference with a business expectancy." Castle Rock asserts "BBB was not justified in its interference with Castle Rock's business expectancy."

██ Tortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996) (citing *Nazeri*, 860 S.W.2d at 317.)

Castle Rock alleged BBB intentionally interfered with Castle Rock's business expectancy by issuing Castle Rock an improperly low grade, publishing the low grade, forcing Castle Rock to resign from BBB, and publishing the statements in BBB's reliability report that directly states or implies that Castle Rock: (a) is a generally unreliable firm which has recently lost its accreditation with BBB; (b) had numerous complaints filed against it, and had not responded in a timely manner or had demonstrated bad faith in an effort to resolve the complaints; (c) had failed to resolve the underlying cause or causes of the pattern of complaints; and (d) had regularly engaged in deceptive advertising and had only changed their policies when admonished by BBB.

██ Castle Rock based part of its claim of tortious interference with a business expectancy on the publication of the BBB report. However, where a tortious interference claim is based upon an alleged defamation, if a plaintiff's defamation claim fails, the tortious interference claim must also fail because the plaintiff cannot establish an absence of justification as a matter of law. *Capobianco v. Pulitzer Pub. Co.*, 812 S.W.2d 852, 860 (Mo.App. E.D.1991).

In *Capobianco*, the plaintiff filed a claim for defamation and intentional interference with a business expectancy. *Id.* at 856–57. The plaintiff's defamation claim was based upon statements in newspaper articles that the plaintiff alleged imputed a lack of fitness in his profession. *Id.* For his claim of intentional interference with a business expectancy, the plaintiff alleged that by publishing the defamatory statements the newspaper intentionally interfered with a valid business expectancy in an employment agreement with a school district. *Id.* at 859. The court held that because the plaintiff's claim for defamation failed and the newspaper had the right to publish the articles and the plaintiff could not show absence of justification, the newspaper could not be liable for intentional interference with a business expectancy. *Id.* at 860. The court noted that where the newspaper articles were not defamatory, the newspaper could not be liable for the alleged intentional interference with a business expectancy if the interference itself was not independently wrongful. *Id.*

██ Here, Castle Rock's claim of interference with a business expectancy is based in part on the alleged defamation by BBB in the report. Because Castle Rock's defamation claim based on the BBB report fails, any alleged interference with a business expectancy based on the BBB report is not independently wrongful. Thus, Castle Rock cannot show absence of justification, and Castle Rock's claim of tortious interference with a business expectancy based on the alleged defamation by BBB fails.

Castle Rock also premises its interference claim on the alleged "forced resignation" from BBB membership. However, Castle Rock acknowledges that it resigned, refusing an opportunity to present its case to the BBB ethics committee. Even if Castle Rock's allegation that it resigned under duress was construed as a "constructive expulsion," Castle Rock did not plead any facts showing that BBB's request that it resign or face expulsion was independently wrongful such that it could provide the basis for a tortious interference with a business expectancy claim. Castle Rock's conclusory allegations that BBB was carrying out a personal vendetta to destroy Castle Rock are insufficient. *See Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago, Inc.*, 120 Ill.App.3d 254, 75 Ill.Dec. 947, 458 N.E.2d 115, 120 (Ill.App. 1 Dist.1983). Accordingly, Castle Rock failed to plead facts showing an absence of justification with regard to its resignation from BBB.

The trial court did not err in dismissing Castle Rock's claim for tortious interference with a business expectancy. Point denied.

The judgment is affirmed.

MARY K. HOFF, J. and SHERRI B. SULLIVAN, J., concur.