# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2184
_____

Others First, Inc.

*Plaintiff - Appellant*


Better Business Bureau of Greater St. Louis, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 14, 2016
Filed: July 12, 2016
_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.
_____

LOKEN, Circuit Judge.

In August 2011, the Better Business Bureau of Greater St. Louis ("the BBB") published a news release ("the Release") expressing concern about Others First, Inc. ("Others First"), a Michigan-based charity that had recently begun soliciting vehicle donations in the St. Louis area. A copy of the Release is attached as Appendix A to this opinion. In June 2014, Others First filed this diversity action in the Eastern District of Missouri, asserting tort claims for injurious falsehood, based on alleged falsehoods contained in the Release, and for interference with business expectancy,

based on allegations that the BBB published the Release to direct car donations to a competing BBB member, took actions to keep the Release on the first page of Google search results for the search term "Others First," and induced a Kansas City television station to run a story in November 2014 based on the Release.

The BBB filed motions to dismiss and for summary judgment. The district court[1] granted summary judgment in favor of the BBB, concluding that the Release was not actionable injurious falsehood because "no reasonable factfinder could ever find that the BBB stated anything other than the truth and its seemingly well-informed opinions about Others First," and that the tortious interference claim necessarily failed because the Release contained no wrongful defamation. Others First appeals, arguing that both claims should have survived summary judgment because the record contained sufficient evidence to raise genuine issues of disputed fact.[2] Reviewing the grant of summary judgment *de novo* and viewing the facts in the light most favorable to the non-moving party, Others First, we affirm. See Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002) (standard of review).

## I. The Tortious Interference Claim.

Others First's principal argument on appeal is that the district court erred in concluding that the tortious interference claim necessarily fails because the Release contained no actionable injurious falsehood. Under Missouri law, "[t]ortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or

---

[1]The Honorable Rodney W. Sippel, Chief United States District Judge for the Eastern District of Missouri.

[2]Others First argued to the district court that summary judgment was premature because it had not conducted discovery, but it did not file a motion seeking additional time to conduct discovery. See Fed. R. Civ. P. 56(d).

relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 316 (Mo. banc 1993). To show an absence of justification, Others First has the burden of producing sufficient evidence to show that the BBB employed improper means to further its own interests. "[I]mproper means are those that are independently wrongful, such as . . . defamation, misrepresentation of fact, . . . or any other wrongful action recognized by statute or the common law. Conversely, no liability arises if the defendant had an unqualified legal right to do the act complained of." Id. at 317 (citation omitted).

"[W]here a tortious interference claim is based upon an alleged defamation, if a plaintiff's defamation claim fails, the tortious interference claim must also fail because the plaintiff cannot establish an absence of justification as a matter of law." Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, 354 S.W.3d 234, 245 (Mo. App. 2011); see Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-20 (1990). We reject Others First's contention that the record contains no evidence supporting the BBB's legitimate interest in warning consumers of questionable business practices. If record evidence was needed, Others First itself provided the BBB's published Mission Statement in its summary judgment responsive exhibits. Thus, if the Release contained no actionable injurious falsehood -- the issue we will discuss in Part II -- Others First needed to submit sufficient evidence of some other independently wrongful action to avoid summary judgment dismissing its tortious interference claim.

Others First argues that it submitted sufficient evidence of three independently wrongful acts: the BBB (1) published the Release "to help a BBB member . . . obtain an unfair and illegal competitive advantage over Others First"; (2) republished the Release to keep it at the top of Google search engine results; and (3) induced or assisted a Kansas City television station to run the November 2014 story based on the Release. Assuming without deciding that sufficient evidence supporting these

allegations of wrongful motive and actions would defeat a defamation defendant's motion for summary judgment, the record contains no evidence supporting these allegations, other than their assertion in the First Amended Complaint, and declarations by an officer and a contracting agent stating that the assertions are what Others First believes to be true. "Mere opinion fails to raise any issue of material fact that precludes summary judgment." Rice v. Hodapp, 919 S.W.2d 240, 244 (Mo. banc 1996); see Castle Rock, 354 S.W.3d at 245-46. Therefore, Others First failed to prove the BBB employed any other improper means, and the district court properly granted summary judgment on this claim if the Release was not defamatory.

## II. The Injurious Falsehood Claim.

Under Missouri law, although defamation and injurious falsehood are distinct torts, for a statement to be actionable as injurious falsehood it must be defamatory. See Diehl v. Kintz, 162 S.W.3d 152, 155-56 & n.4 (Mo. App. 2005). "[O]ne who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other" if:

> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Wandersee v. BP Prods. N. Am., Inc., 263 S.W.3d 623, 628 (Mo. banc 2008) (quotation and emphases omitted). To determine if the statement is defamatory, the challenged words "must be stripped of any pleaded innuendo and construed in their most innocent sense," but at the same time "must be considered in context, giving them their plain and ordinarily understood meaning." Nazeri, 860 S.W.2d at 311 (citations omitted).

If a statement is true, it is not defamatory as a matter of law. Rice, 919 S.W.2d at 243-44. Statements of opinion are protected by the First Amendment, and, even if made maliciously or insincerely, cannot be actionable. See Hammer v. City of Osage Beach, 318 F.3d 832, 842 (8th Cir. 2003) (applying Missouri law). Whether a statement is a protected opinion is also a question of law. The court must look to "the totality of the circumstances to determine whether the ordinary reader would have interpreted the statement as an opinion." Id. at 842-43 (quotation omitted). However, the First Amendment "privilege does not apply when the statement of opinion implies the existence of undisclosed defamatory facts." The question for the court is "whether a reasonable factfinder could conclude that the statement [of opinion] implies an assertion of objective fact." Castle Rock, 354 S.W.3d at 241 (quotation omitted).

Others First failed to plead alleged defamatory statements with the particularity required by Missouri law. However, the district court denied the BBB's motion to dismiss because Others First's response in opposition to summary judgment alleged that eight specific statements in the Release were defamatory as a matter of law. Like the district court, we will limit our analysis to those eight statements.

1. *"BBB Urges Caution On Others First Car Donation Programs."* Others First solicits car donations nationwide, operating under various names including Cars Helping Veterans, Cars Fighting Cancer, and Mikie's Minutes. The BBB began investigating Others First in March 2011 when it began soliciting car donations in the St. Louis area under the name Cars Helping Veterans. The Release suggested caution because of possible ties between Others First and Rick Frazier, who was the subject of prior complaints for his work with vehicle donation programs in other States. Urging caution was an expression of the BBB's opinion because it was "a subjective assessment and not an objectively verifiable fact." Castle Rock, 354 S.W.3d at 242. Therefore, we consider whether the "opinion implie[d] the existence of undisclosed defamatory facts." Id. at 241. Reading this statement in the context of the Release as a whole, we conclude that the truthful facts in the Release were sufficient to support

the cautionary opinion without implying any other facts. Thus, it was protected opinion and not defamatory as a matter of law. See Hammer, 318 F.3d at 842. Others First argues the BBB could not have "republished" the Release on the internet for four years solely to "caution" consumers. But it submitted no evidence to support this speculative, counterintuitive assertion.

2. *"The BBB advises caution when dealing with Rick Frazier and the charity Others First. Others First is a two-year-old nonprofit that raises money for causes, such as disabled and homeless veterans, cancer research, children and animals. In recent months, Others First has mailed solicitations to St. Louis area consumers on behalf of an affiliated charity, Cars Helping Veterans."* Like statement 1, this statement urging caution was a protected opinion. The facts set forth are undisputed.

3. *"A national charity that is seeking car donations in the St. Louis area has ties to a Detroit area businessman who has been criticized for alleged improprieties in running similar programs, the [BBB] warns."* In support of its motion for summary judgment, the BBB submitted a December 1998 article from the *Detroit Free Press* stating that Charity Motors, "the largest of metro Detroit's used-car donation programs," gave less than 40% of its money to charity last year and paid its "founder," Rick Frazier, "a huge sum . . . drawing sharp criticism from [the] Michigan Attorney General"; and that Frazier had previously been sued by Mother Waddles Perpetual Mission for allegedly withholding money he earned by running the Mission's vehicle donation program. The BBB also submitted documentary evidence establishing that (i) in 2010, Others First entered into consulting agreements with Charity Funding Consulting Group, Inc., a for-profit corporation formed and owned by Frazier, and with Charity Car Brokers, LLC, a corporation formed by Maurice Banks, former Treasurer of Others First, to administer and manage Others First's vehicle donation program; (ii) Banks and Frazier were also involved with a venture called Charity Tickets, Inc.; (iii) some sources listed Frazier as the founder of Others First, alough Frazier denied being the founder and David Kennedy, President of

Others First, stated that Frazier had never been a director or officer of Others First in a letter the BBB quoted in the Release; and (iv) Frazier had filed a lawsuit against the Military Order of the Purple Heart Service Foundation relating to his contracts to run its car donation charities, and the Foundation filed a counterclaim alleging that Frazier misappropriated funds and breached the contracts.

Others First argues that it had no "ties" to Frazier because Frazier was not the founder of Others First. Considering the statement in context and giving the words their ordinary meaning, a reader would construe "ties" more broadly than Others First. Frazier's undisputed "tie" to Others First was a contract to run its vehicle donation program for a percentage of the profits. It was also true that Frazier was "criticized for alleged improprieties" in the *Detroit Free Press* article and the Foundation countersuit. Thus, stripped of pleaded innuendo, statement 3 was factual and not defamatory. See Nazeri, 860 S.W.2d at 311.

4. *"Michelle L. Corey, BBB President and CEO, said the BBB is concerned about Frazier's controversial history with other charitable vehicle donation programs. 'Mr. Frazier's past problems are reason to be cautious about his newest venture,' she said."* This statement was Corey's opinion, another expression of caution like the protected opinion in statements 1 and 2. There was nothing in Corey's opinion to suggest an implicit defamatory fact. The Release provided the context for her opinion, including details of Frazier's "controversial history." Others First argues the phrase "newest venture" falsely implied that Frazier founded Others First. But the plain meaning of "newest venture" is not so limited. Frazier unquestionably joined in a business venture with Others First by agreeing to manage its vehicle donation program. The statement was not defamatory as a matter of law.

5. *"Corey also said it appears that a former associate of Frazier, and perhaps even Frazier himself, may have potential conflicts of interest over their involvement in the Others First donation program."* Alleging a conflict of interest is not

defamatory unless it implies undisclosed defamatory facts. See Pape v. Reither, 918 S.W.2d 376, 381 (Mo. App. 1996) (allegations of illegal conduct are non-defamatory opinions); Koly v. Enney, 269 F. App'x 861, 865 (11th Cir. 2008) (classifying conduct as "a serious conflict of interest" was protected opinion). The statement was presented as opinion, couched in equivocal language -- "appears," "perhaps," "may," and "potential." See Ribaudo v. Bauer, 982 S.W.2d 701, 705 (Mo. App. 1998) ("[T]he average reader would have believed the statements were opinion" because of their "qualifying language.") The *Detroit Free Press* article provided a basis for Corey's "conflict of interest" opinion, reporting that "charity officials are prohibited by federal law from deriving unreasonable personal gain from their involvement with their charity." Statement 5 was non-defamatory opinion as a matter of law.

6. *"Frazier is described in the media and on the website of an Others First charity as the charity's founder, although he denies that role. Banks is the previous treasurer of Others First."* This statement is non-actionable as a matter of law because it was true, whether or not Frazier was in fact Other First's founder. The BBB included Other First's response in the Release: "Kennedy . . . said in a letter to the BBB that Frazier has never been a board member or officer of Others First and any reference to him as founder is 'unauthorized and misguided.'"

7. *"Frazier's problems in the charity arena have been the subject of news reports. The Detroit Free Press reported in 1998 that the Mother Waddles Perpetual Mission charity in Detroit accused Frazier of several improprieties in that donation program. The newspaper also raised questions about Frazier's involvement with the Charity Motors donation program in Detroit."*

8. *"Last year, the Virginia-based Military Order of the Purple Heart Foundation alleged in a court suit that an audit found widespread problems with Frazier's role in that program, including self-dealing, illegal practices and destruction of incriminating records."* Others First does not contest the fact that the *Detroit Free Press* wrote articles critical of Frazier and that the Foundation made

allegations in a countersuit. The Release noted that "Frazier denied the claims." These statements were non-defamatory because the facts stated were true.

Others First argues that "[n]o materials are provided to the reader to assess the veracity" of the statements in the Release. However, there is no requirement that readers be provided source materials for non-defamatory speech to be protected. Hammer, 318 F.3d at 843. The district court properly granted summary judgment dismissing Other First's claim of injurious falsehood because all of the challenged statements were either true statements of fact or protected opinion, and properly granted summary judgment dismissing the tortious interference claim given the absence of wrongful defamation.

The judgment of the district court is affirmed.

_____

# Appendix A

# BBB Urges Caution On Others First Car Donation Programs

8/2/2011

**Tools |**  Print  RSS  Bookmark & Share  A A A

Recommend

*St. Louis, Mo., August 2, 2011* - A national charity that is seeking car donations in the St. Louis area has ties to a Detroit area businessman who has been criticized for alleged improprieties in running similar programs, the Better Business Bureau (BBB) warns.

The BBB advises caution when dealing with **Rick Frazier** and the charity **Others First**. Others First is a two-year-old nonprofit that raises money for causes, such as disabled and homeless veterans, cancer research, children and animals.



In recent months, Others First has mailed solicitations to St. Louis area consumers on behalf of an affiliated charity, **Cars Helping Veterans** (www.carshelpingveterans.org). Advertising flyers mailed throughout the bi-state area say the vehicle donations go to help veterans of the U.S. Armed Forces.

Michelle L. Corey, BBB President and CEO, said the BBB is concerned about Frazier's controversial history with other charitable vehicle donation programs. "Mr. Frazier's past problems are reason to be cautious about his newest venture," she said.

Corey also said it appears that a former associate of Frazier, and perhaps even Frazier himself, may have potential conflicts of interest over their involvement in the Others First donation program.

Frazier and former coworker Maurice E. Banks recently signed potentially lucrative contracts to run vehicle donation programs for the charity. Frazier is described in the media and on the website of an Others First charity as the charity's founder, although he denies that role. Banks is the previous treasurer of Others First.

Frazier's **Charity Funding** and Banks' **Charity Car Brokers** are named as fundraising consultants for Others First in several states. Contracts in Illinois and North Carolina show Others First has agreed to pay Banks and Charity Car Brokers 30 percent of the net profits from the program.

Frazier's problems in the charity arena have been the subject of news reports. The *Detroit Free Press* reported in 1998 that the Mother Waddles Perpetual Mission charity in Detroit accused Frazier of several improprieties in that donation program. The newspaper also raised questions about Frazier's involvement with the Charity Motors donation program in Detroit.

Last year, the Virginia-based Military Order of the Purple Heart Foundation alleged in a court suit that an audit found widespread problems with Frazier's role in that program, including self-dealing, illegal practices and destruction of incriminating records. Frazier denied the claims.

About two years ago, Frazier began operating a car donation program for Vietnam Veterans of America in about a dozen states. That organization has said it is satisfied with the program.

Records on file with Michigan show that Others First was registered as a nonprofit in September 2009. The incorporator was listed as David S. Kennedy of West Bloomfield, Mich.

In the months that followed its incorporation, Others First registered several assumed names, including: **Cars Helping Veterans, Cars for Research, Cars Fighting Cancer, Cars for Christ, Cars to Help Kids, Cars Helping Pets** and **Mikie's Minutes**.

Others First is registered to do business in at least eight states - Missouri, Illinois, New York, North Carolina, Washington, Colorado, Arizona and Utah - although its various websites say it accepts donations from all 50 states.

The BBB could not determine how much Others First has raised through its vehicle donation program or how much Frazier and Banks have received for running the program. But financial information made public by the Military Order of the Purple Heart

Foundation two months ago shows that foundation made $15.9 million from its car donation program in the 11 months ending June 30, 2010, with most of that coming from five states.

Frazier and Banks did not respond to a BBB request for interviews. Kennedy, president of Others First, said in a letter to the BBB that Frazier has never been a board member or officer of Others First and any reference to him as founder is "unauthorized and misguided." He added that because Banks resigned from the Others First board before signing contracts with the charity, "there never was a conflict of interest."

The BBB has these tips to consumers considering donating a vehicle to charity:

- Verify that the recipient organization is a tax exempt charity.
- Find out how the charity benefits financially from the resale of the car.
- For tax records, take a photo of the car and keep copies of current classified ads or guide value estimates for similar vehicles. (For more deductibility information, get a copy of IRS Publication 561, "Determining the Value of Donated Property.")
- If a car is worth more than $5,000, get a professional appraisal before donating.
- Find out if the charity is registered with your state.
- Check for a BBB Charity Review by going to www.bbb.org or calling 314-645-3300.

**Contacts:** Michelle Corey, President & CEO, 314-584-6800, mcorey@stlouisbbb.org; Chris Thetford, Vice President-Communications, 314-584-6743 or 314-681-4719 (cell), communications@stlouisbbb.org; or Jim Judge, Charity Review Director, 314-584-6735, charity@stlouisbbb.org

**Average Rating |**                    RATE IT

**Tagged under |**  Others_First Rick_Frazier Cars_Helping_Veterans       z
                  car_donation Maurice_Banks Charity_Funding
                  Charity_Car_Brokers Mother_Waddles BBB
                  Better_Business_Bureau Cars_For_Christ
                  Mikie's_Minutes car_charities